# EXHIBIT 2

# Defendants' Cross-Motion for Summary Judgment

*Samma v. Esper, 20-cv-1104 (D.D.C.)*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------X

ANGE SAMMA, et al,

Plaintiffs

v.          Civil Action 20-1104-ESH

U.S. DEPARTMENT OF DEFENSE et al,

Defendants

---------------------------X

Washington, D.C.
Tuesday, May 5, 2020
2:00 p.m.

TRANSCRIPT OF TELECONFERENCE
BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs: Scarlet Kim, Esq.
                    Jonathan Hafetz, Esq.
                    Brett Max Kaufman, Esq.
                    Arthur B. Spitzer, Esq.
                    Noor Zafar, Esq.
                    AMERICAN CIVIL LIBERTIES
                      UNION FOUNDATION
                    125 Broad Street, 18th Floor
                    New York, NY 10004
                    (917) 913-4923

For the Defendant:  Nathan Michael Swinton, Esq.
                    Liam Holland, Esq.
                    U.S. DEPARTMENT OF JUSTICE
                    Civil Division, Litigation Branch
                    1100 L Street NW
                    Washington, DC 20530
                    (202) 305-7667

Court Reporter:     Lisa Walker Griffith, RPR
                    U.S. District Courthouse
                    Room 6507
                    Washington, D.C.  20001
                    (202) 354-3247

```
1                    P R O C E E D I N G S

2   (This is Civil Action 20-1104.  Samma, et al. versus DOD.)

3              THE COURT:  This is Judge Ellen Segal Huvelle.

4   Can I find out who is here for the plaintiffs?

5              MS. KIM:  Scarlet Kim for plaintiffs.  Also on the

6   call from the ACLU will be Jonathan Hafetz, Brett Max

7   Kaufman, Noor Zafar, Art Spitzer and Jenny Coscarella (ph).

8              THE COURT:  Okay.  And you are going to be

9   speaking, Ms. Kim?

10             MS. KIM:  Yes, I will be.

11             THE COURT:  On behalf of government?

12             MR. HOLLAND:  Liam Holland, I'm here on behalf of

13   the government.  I think Nate Swinton should be joining the

14   call, he is going to be speaking.

15             THE COURT:  Mr. Swinton, are you here?

16             MR. SWINTON:  Yes, Your Honor, I'm here.

17             THE COURT:  So we will assume that it is Mr.

18   Swinton speaking for the government and Ms. Kim for the

19   plaintiffs.  If anyone else has the audacity to speak, you

20   will have to tell us who you are first so the court reporter

21   can identify you.

22             I guess there was some misunderstanding.  I got

23   two different schedules.  But my memo, or my e-mail sent by

24   my law clerk was to encourage you to see whether we can

25   resolve this matter, not come up with a bunch of schedules.
```

1    But I still would encourage the parties to talk and see if

2    they can't come up with a resolution to this case.

3         Let me just ask a couple of questions about the

4    plaintiffs.  Is it true that the plaintiffs are challenging

5    section one only?

6         MS. KIM:  Of the October 13, 2017 memo, yes, that

7    is the case.

8         THE COURT:  Are these plaintiffs, they have all

9    had whatever verification is required for their particular

10   category with the exception of the one, I assume, MAVNI?

11        MS. KIM:  So I believe the MAVNI has actually

12   completed her background screening and military service

13   suitability determination because my understanding is that

14   she was not allowed to ship to basic combat training until

15   that was completed.

16        THE COURT:  Okay.

17        MS. KIM:  As to the other plaintiffs, the other

18   five plaintiffs are green cardholders.  And they are not,

19   most of them are unclear as to whether or not they have

20   completed the background training and military service

21   suitability determination requirement because they have not

22   received any official notification from the Department of

23   Defense that that screening has been completed.

24        THE COURT:  Under the other memo regarding the

25   lawful permanent residents, they're not required the way

1  they are for MAVNIs to finish that before they go to either

2  basic or active duty?

3         I should ask Mr. Swinton that question.  I'm just

4  trying to make sure I understand.  Mr. Swinton, do you know

5  whether these five plaintiffs, not the one that would be a

6  MAVNI, but do you know whether they have completed what is

7  necessary for background investigation?

8         MR. SWINTON:  I don't know the answer to that

9  question, Your Honor.

10         THE COURT:  Do you know, Mr. Swinton, whether a

11  lawful permanent resident can enlist, go to basic, and/or

12  active without completing whatever it is they have to

13  complete?

14         MR. SWINTON:  When you are referring to whatever

15  it is they have to complete, are you asking about the

16  background screening?

17         THE COURT:  Yeah, their background screening is a

18  little different than the MAVNIs.

19         MR. SWINTON:  That's correct.  I believe it is

20  governed by a different policy memo that was issued on

21  October 13, 2017.  I'm trying to access that right now, yes.

22         MS. KIM:  Your Honor, if I may, I might be able to

23  answer this question and that's because actually that

24  companion memo that was issued on October 13, 2017 was

25  actually the subject of another ACLU challenge.

1          My understanding -- and the government should

2     obviously confirm -- is that, according to that companion

3     memo, green @cardholders were not allowed to ship out to

4     basic training until they completed their background

5     screening and military service suitability determination.

6          But on July 30th of 2019, the Department of

7     Defense issued a new memo entitled "Expedite Screening

8     Protocol" that temporarily supplanted that October 13 green

9     cardholder screening policy.  The new expedited screening

10    protocol applied equally to green cardholders and citizens,

11    and it does allow for both of those classes of service

12    members to ship to basic training before they have completed

13    the screening.

14          However, that extradited screening protocol memo

15    is due to expire on July 30th of this year.  If it doesn't

16    extend the prior October 13 green cardholder screening

17    policy, the Department of Defense may reinstate that prior

18    policy if it sees fit.

19          THE COURT:  Okay.  But we don't know one way or

20    another.

21          MS. KIM:  My understanding is that green card

22    holders are able to ship to basic training without

23    completing their background screening, which is similar to

24    citizens.

25          THE COURT:  Okay.  July 13, what year again?

1          MS. KIM:  July 30, 2019.

2          THE COURT:  Do you know whether the people, your

3    plaintiffs, with the exception of the MAVNIs, have complied

4    or you don't know?

5          MS. KIM:  I would have to go back and check with

6    each of their records specifically.  But I believe that the

7    majority of them have informed us that they're unclear as to

8    whether they have completed the background screening because

9    they have never been told whether or not it's been

10   completed.

11         But because under the new extradited screening

12   protocol policy, they're essentially allowed to ship before

13   they complete the screening.  So the fact that they're

14   shipping to basic screening does not provide a definite

15   answer as to whether they have completed the background

16   screening.

17         THE COURT:  What if they have gone to active duty?

18   Does that tell you anything different?

19         MS. KIM:  Almost all of them are currently serving

20   with their duty station.  And yet, they still were unclear

21   for the most part whether or not they had completed the

22   background screening.

23         THE COURT:  But as far as you understand, that is

24   not the reason that they're not getting their N-426s?

25         MS. KIM:  We don't believe so because, for most of

1   them, when they requested the N-426 certifications and had

2   those requests denied, for the most part, the reasons have

3   been either that they had failed to complete the minimum

4   service duration requirement and/or that the O6, a

5   commissioned officer of O6 pay grade or higher needs to sign

6   off on the certification, and was unable to at that time or

7   needs more topic in order to complete that sign-off.

8          THE COURT:  Do you know Mr. Swinton whether there

9   other requirements regarding the MSSD investigation, et

10  cetera, is holding up anybody in this case?

11         MR. SWINTON:  I don't know with respect to these

12  specific plaintiffs, Your Honor.

13         THE COURT:  Now, it's going to be -- it's a little

14  hard to know exactly what issue is in front of me.  So far

15  the plaintiffs have made two challenges to the October 13th

16  memo.  One has to do with who signs off on the N-426 and the

17  second one has to do with whether you can require 180 days,

18  or in one instance, it's a year.  So far, I haven't heard

19  much about the background investigation.

20         What is it that you -- first of all, what is the

21  difference in scheduling between what you proposed first in

22  agreement with the plaintiffs and then you came up with a

23  longer one based on my e-mail.

24         MR. SWINTON:  Your Honor, this is Nathan Swinton.

25  Were you asking me that question?

1         THE COURT:  Yes, you.

2         MR. SWINTON:  Sure.  We actually, plaintiffs and

3  the government conferred again this morning and came up with

4  an agreed upon briefing schedule that is very similar to

5  what I submitted to the Court yesterday as plaintiffs'

6  proposal with just a slight modification.  But we're in

7  complete agreement about the briefing schedule going

8  forward.

9         THE COURT:  Let's hear what you have in mind?

10         MR. SWINTON:  Sure.  We would propose that the

11  government's deadline to file an opposition to plaintiffs'

12  Motion/Motion for Summary Judgment be May 22nd.

13         THE COURT:  Okay.

14         MR. SWINTON:  The plaintiffs' deadline to file a

15  Reply/Opposition to the Motion for Summary Judgment would be

16  May 29th.

17         THE COURT:  Okay.

18         MR. SWINTON:  Defendant's deadline to file an

19  opposition to plaintiffs' class certification motion would

20  be June 1st, so we'd have staggered briefing for the class

21  cert motion and the PI Motion for Summary Judgment.

22         The plaintiffs' deadline to file a Reply in

23  support of their class cert motion would be June 8th.  And

24  the defendant's deadline to file a Reply in support of the

25  Motion for Summary Judgment would also be on June 8.

1      THE COURT:  And you will also file a reply in

2  support of your Motion for -- is it Summary Judgment?

3      MR. SWINTON:  Yes, the government intends to move

4  for summary judgment.  So we're consolidating the PI

5  briefing with the summary judgment briefing.

6      THE COURT:  So under Rule 65, I think it's maybe

7  2(a) if I remember correctly, but you all agree that you

8  will collapse the PI with the merits?

9      MR. SWINTON:  The government didn't reach

10  agreement on that specific issue, Your Honor.  So I don't

11  know what the plaintiffs' position is.

12      THE COURT:  I need to hear from the plaintiffs on

13  that.

14      MS. KIM:  Yes, we agreed to the government's

15  proposal to collapse the preliminary injunction, then

16  summary judgment briefing.  I think under the government's

17  proposal, what that would mean is that our PI motion would

18  eventually be converted into a summary judgment motion.  So

19  we would be briefing cross motions for summary judgment.

20      THE COURT:  Okay.  What do we use for an

21  administrative record?

22      MR. SWINTON:  Yes, Your Honor.  I saw that

23  question in an e-mail from your law clerk yesterday.

24      So the government would, consistent with the local

25  rules, file a certified index for the record on May 22nd.

1 And on that same date, provide a copy of the administrative

2 record to plaintiffs.

3      THE COURT:  Okay.  Is the administrative record

4 going to be similar, the same or different from what -- I

5 have two administrative records, one in Kirwa, I have one

6 from the Department of Defense from before.  Are we looking

7 at others?

8      MR. SWINTON:  I don't know the answer to that

9 question yet, Your Honor, as we're still in the process of

10 compiling it.

11      THE COURT:  Okay.  Well, it would help if you

12 would get your hands on the Kirwa administrative record and

13 the DOD and we not proliferate.  I can't tell if it will be

14 useful or not.  I would assume use what I have but --

15      MR. SWINTON:  I guess, to address the Court's

16 desire in this area, if there is overlap with the

17 administrative record in this case and the records that were

18 submitted in those cases, would it be helpful if the

19 government indicated that?

20      THE COURT:  Yes, it would because that way, if you

21 could tell us if we are referring to prior opinions, then

22 we're not trying to figure out whether we've already

23 discussed such and such a document.  I can't remember

24 whether there was a Nio administrative record.  There

25 probably was.

1    MR. SWINTON:  I believe there was.  I do have the

2    one from Kirwa.

3    THE COURT:  Yes.  I have seen the index.  But I do

4    know there was one from Department of Defense which would

5    probably have some relevance.  Nio has a lot more to do with

6    -- Well, I don't know what there is for Nio.  But for

7    whatever you file, if you could tell us whether it has been

8    used before, either Kirwa or there was one called DOD and

9    there was one in Nio, it would help us so that we're not

10   running around, trying to figure out whether we've talked

11   about this document before.

12   And the government, if you are moving for summary

13   judgment, can you give us some idea what your arguments are

14   are?

15   MR. SWINTON:  I would be happy to with the caveat

16   that these are still in the early stages, so I don't want to

17   bind the government to something.  A lot of this case, as it

18   did in Kirwa, boils down to the discussion that the military

19   has in this process.

20   I litigated Kirwa, as I'm sure you know.  So I'm

21   well aware of the Court's view in that case.  We have a lot

22   of overlap with the legal issues under 7061 and 7062 of the

23   APA.  And I think the briefing will inevitably revisit some

24   of those issues and also discuss the Kirwa issues and to

25   what extent they're controlling in this case.

1          There are also some changes in the legal landscape

2     that I think we would want to make the Court aware of, both

3     court decisions that address these issues with respect to

4     DOD's discretion under section 1440, as well as Congress.

5     As the Court knows, last week in Kirwa, we submitted a new

6     policy issued by DOD.  That was issued in response to

7     Congress' directive in the 2020 NDAA.  And that spoke

8     specifically to N-426s and DOD's responsibility for those

9     forms.  And I think it is important for the government to

10    make the Court aware of these recent developments of what

11    has transpired since the Court issued its rulings in Kirwa,

12    up until now.

13          THE COURT:  Let's just assume for purposes of

14    argument that I find what I said in Kirwa to be convincing.

15    And I can't understand, all the people in this group except

16    for one has satisfied all of your requirements as far as I

17    understand.  And they can't get off the starting line.

18    That's what I don't -- it seems to me, that's why I think

19    this case could be settled.  If you have people who have

20    complied with all of your requirements, if you give them

21    their N-426, there is no problem.

22          MR. SWINTON:  We're aware of that issue, Your

23    Honor.  And we've discussed it with the Army.  I think that

24    is something else to consider and that we've brought to the

25    Army's attention.

1          The five of the six plaintiffs that you identify

2    are not being denied N-426 through operations of the policy

3    on its own terms.  They appear to have satisfied the policy

4    and just haven't been able to get the N-426.  So that's

5    something that we've had multiple discussions with the Army

6    already.  And they are very much aware of the circumstances

7    that those five individuals find themselves in.

8          THE COURT:  I assume if they're a real class, then

9    you've got a bunch of people sitting out there, the

10   plaintiffs can correct me, but you have a bunch of people

11   out there who have done their six months, who have served

12   honorably, they're in active duty now, and there is nothing

13   in the policy that is holding them up, other than finding

14   the right person to sign off.

15         You could have a person spend two hours signing

16   off on these things and that's all you have to do.  It isn't

17   as if you have a complicated -- lawful permanent residents,

18   everybody in this group falls in that except for this person

19   Li.

20         Do the plaintiffs have any idea how many other

21   people fall into that category?  That is, that they've

22   complied with it and so if they have the N-426 in hand,

23   they'd have nothing to complain about.

24         MS. KIM:  We don't have a sense of what that

25   subclass number would consist of.

1          I would like to clarify that one of our

2     plaintiffs, one of the green cardholders has been serving

3     two months.  So she has not met the minimum service duration

4     requirement in the policy, which we do not believe is lawful

5     or consistent with Section 1440.  But just to clarify on the

6     factual matter that he has not met that particular

7     requirement.

8          THE COURT:  All right.  Let's see.  He hasn't got

9     to basic.

10         MS. KIM:  She is in the selected reserves.  So she

11    has completed two drill periods.

12         THE COURT:  Okay.  But he doesn't fall within the

13    Kirwa class because he is -- he came in after the section

14    two policy, okay.

15         MS. KIM:  She actually doesn't fall in the Kirwa

16    class because she is a green cardholder.  And the Kirwa

17    class only covers (unintelligible) active reserves.

18         THE COURT:  The other person, Li, she's a DACA.

19    And she has complied with -- she must have -- I guess that's

20    what has happened between 2016 and 2019 -- she gets her

21    security clearance or her MSSD.

22         Do you know, Mr. Swinton, what happened to this

23    person?  And now she has been in active duty for seven

24    months at least.  She's another one.  Let's assume that she

25    has complied with the investigation.

1       MR. SWINTON:  Yeah, it's based on the allegations,

2  and my reading was that it appears that she's met the

3  requirements from the policy memo.  I don't know the reason

4  why she has not yet received the N-426 other than what she

5  has alleged in her complaint.

6       THE COURT:  She has to complete under the policy

7  180 days of service.  So she has done that.

8       This is why I think that, if the class turns out

9  to be mainly people who are just being held up for

10  bureaucratic reason and they have complied with everything

11  that they could conceivably do under their policy, they have

12  nothing to complain about, if you would just take care of

13  problem.  Then maybe you are left with some small group of

14  of people but we're not going to know.

15       And from past experience, Mr. Swinton, we get down

16  to the wire and all of a sudden, the Department of Defense

17  for lack of better word, wakes up and realized that X. isn't

18  going to work.  Then they pivot and do Y. and waste a lot of

19  time.

20       MS. KIM:  Your Honor, if I may, I just wanted to

21  note that the government has represented that about 5,000

22  green cardholders enlist per year and our position--

23       THE COURT:  5,000 what?

24       MS. KIM:  Green cardholders enlist per year.

25  There is also some number of MAVNI recruits who served

1  active duty that are not covered by the Kirwa lawsuit who

2  are presumably in the midst of completing their military

3  service suitability determinations and just shipping out to

4  basic training within a recent timeframe.

5        So our position is that none of the members of

6  that putative class should have to meet any of the

7  requirements under section one of the policy.  And there

8  could very well be potentially thousands of them, given the

9  number that the government has represented that enlist in

10 the military per year.

11       So we just want to clarify that we don't believe

12 that the number of individuals who remain subject to the

13 policy, in other words, who have not yet completed the

14 requirements of the policy is actually quite small.  We

15 would believe it to be quite large.

16       THE COURT:  It may be but there is the portion of

17 the group who ought not to be in the case, so to speak,

18 because there is really no -- as far as I can tell, there is

19 nothing that is holding them back except somebody doesn't

20 sign off.  That group of people ought to be taken care of.

21 So we don't waste our time on something that is

22 straightforward and simple.

23       So Mr. Swinton, I'm asking you to try to figure

24 out, one, how many people we have in the group that have the

25 lawful permanent residents, how many of them who are likely

1    plaintiffs, who have done everything they have to do with

2    the exception of one person, because at that point, you've

3    got a different class certification issue.

4            MR. SWINTON:  Your Honor, absolutely.  We have

5    talked to Army already about this issue and will continue to

6    talk with them and very much hope to have an update for you

7    when we file on the 22nd.

8            THE COURT:  Okay.  Then we will buy into your

9    schedule.  And besides unreviewability, I guess you are

10   going to argue -- you are obviously going to argue what I

11   should call the 9th Circuit.  I will have to go back and

12   look at that.  And are there any other legal issues other

13   than unreviewability?

14           MR. SWINTON:  That would come up in multiple ways,

15   Your Honor, that would not only be kind of like a

16   Mendez-like, non-reviewability which is what the doctrine

17   was that the 9th Circuit on, but also argument such as

18   committed to agency discretion under the APA itself, which I

19   think is quite similar.  I think other than that it would be

20   most likely just responding to the specific claims and

21   discussing why they stay on this case.  But again, we're

22   still kind of considering developing arguments.  I'm

23   reluctant to commit to something for certain.

24           THE COURT:  Okay.  It would be nice if you could

25   take care of the people that really just present a wholly

1   different issue which is some way or another bureaucracy is

2   not giving them what they're entitled to have, especially

3   since now, you've set 30-days turnaround, but that doesn't

4   kick in until somebody signs.  So the problem is, if nobody

5   signs, the 30 days becomes meaningless, if I read it

6   correctly.

7            Okay.  I think we have our schedule.  We'll set an

8   argument after we -- the last date will be --

9            The issue of irreparable injury will fall out of

10  this now.  We're just going to be focusing on the four APA

11  claims.  Correct?

12           MR. SWINTON:  That's the government's

13  understanding, Your Honor.

14           THE COURT:  Well, that would be my understanding,

15  too.

16           Plaintiffs, that's what happens when you collapse.

17           MS. KIM:  That's fine, Your Honor.

18           THE COURT:  Okay.  I will issue a notice, which I

19  have to do under Rule 65, giving you notice.  I have to say

20  past history, we thought the issues were going to be pretty

21  straightforward.  And that it wasn't going to involve sort

22  of issues that might be contested fact type issues.  And

23  then in the last minute, that changed since I had to yank

24  the idea of a summary judgment.

25           So Mr. Swinton, let's not do that again.  You are

1  wasting your time.

2          MR. SWINTON:  I have apprized the DOD of that fact

3  and reminded them of the Kirwa experience, Your Honor.

4          THE COURT:  They pulled the rug right from under

5  you at the last minute.

6          Okay, then we have our schedule, I'll send out a

7  Rule 65 notification.

8          Was the plaintiffs about to say something about

9  that?

10          MS. KIM:  Yes, sorry, Your Honor.  One small thing

11 I wanted to clarify was that the N-426 policy applies across

12 all of the branches.  And the way that we have proposed to

13 structure our class would not limit the class solely to the

14 Army.

15          The government has indicated that it would seek to

16 understand how many individuals like plaintiffs have met the

17 requirements of section one of the policy, but seem to

18 suggest that they would only make that inquiry of the Army.

19 But I believe that they should be making that inquiry to all

20 of the branches of the military that are subject to the

21 policy.  Our understanding is that there are service members

22 across other branches that may be in a similar position.

23          THE COURT:  There could be, there are a lot

24 smaller numbers, a lot smaller.

25          But again, Mr. Swinton, if you are going to solve

1    this for the people who have done what they're supposed to

2    do, you obviously have to do it across all the services.

3    Agreed?

4              MR. SWINTON:  Not necessarily, Your Honor, all of

5    the named plaintiffs are enlisted in the Army.  So none of

6    the plaintiffs represented any of the other services.  And

7    to gain that type information, I think that is something

8    that's accessible to me within the time we have from the

9    Army.  It is a much bigger challenge to get it across all

10   the different services.  I do know that the number of MAVNIs

11   in the other services is much smaller.  But I don't know of

12   the universe of LPRs that we would be dealing with in other

13   branches.

14             THE COURT:  I was under the impression there were

15   almost no MAVNIs.  But I guess that is going to be part of

16   class issue more than anything else.

17             MR. SWINTON:  I think that's right.  I think might

18   be an issue that would be resolved in briefing on the class

19   cert motion.  But until the time that any sort of class is

20   certified, we're only dealing with plaintiffs who are within

21   the Army.  So I think the only information that would be

22   relevant at this juncture would be information about the

23   Army.

24             THE COURT:  Well, they're not going to agree to

25   that.  But I don't need to resolve it now.  I mean, if they

can show that the people in other branches of the service

are similarly situated, I don't know why it would be limited

just because the plaintiffs are from the Army.  That's like,

we don't need a plaintiff for every location and corporate

manufacturing plant if the policies are the same.  Off the

top of my head, I don't know if that is useful for the class

if they're similarly situated.  But once again, that will

come up out with the class certification.

        Your definition, Ms. Kim was not limited to Army.

        MS. KIM:  It was not, Your Honor.

        THE COURT:  All right.  Well, Mr. Swinton gets the

point I'm sure.

        Okay, I don't know if there is anything else.  Let

me just doublecheck quickly.

        (There was a pause in the proceedings.)

        THE COURT:  Okay.  That's fine.

        If you, Mr. Swinton, can figure out anything to do

with the people who have done what they're supposed to do,

let us know as soon as possible because that will affect

your class cert more than anything else.  All right?

        MR. SWINTON:  Your Honor, may I ask one question

about that?  If we do have any sort of updates in that

regard before May 22nd, would it be helpful if we file some

sort of status update with the Court or would you just

prefer to have it in the briefing?

1          THE COURT:  I didn't hear your alternative.

2          MR. SWINTON:  Or would you just prefer that we

3    provide that information in our brief that we'll be filing

4    on the 22nd?

5          THE COURT:  Well, I think that is up to you.

6          MR. SWINTON:  Okay.

7          THE COURT:  It just seems to me it's going to have

8    a major impact on a variety of these things.  The sooner you

9    figure it out, the better for everybody, that's for sure.

10          Anything further for the plaintiffs?

11          MS. KIM:  I don't think so, Your Honor.

12          THE COURT:  The government?

13          MR. SWINTON:  No, Your Honor.

14          THE COURT:  Okay.  I appreciate your time and we

15    will send out an order with the schedule and the Rule 65

16    notification.  Okay.  Thank you.

17          (Whereupon, at 2:34 p.m., the hearing concluded.)

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of the remotely reported proceedings in the above-entitled matter.

Please Note: This hearing was held in compliance with the COVID-19 pandemic and the standing orders of this court, and is therefore subject to the technological limitations of court reporting remotely, including static, signal interference and other restrictions.

_____     5-15-2020
Lisa Walker Griffith, RPR           Date