

**OFFICE OF THE SECRETARY OF DEFENSE**
1000 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-1000

July 30, 2019

MEMORANDUM FOR CHIEF MANAGEMENT OFFICER OF THE DEPARTMENT OF DEFENSE
           SECRETARIES OF THE MILITARY DEPARTMENTS
           CHAIRMAN OF THE JOINT CHIEFS OF STAFF
           UNDER SECRETARIES OF DEFENSE
           CHIEF OF THE NATIONAL GUARD BUREAU
           GENERAL COUNSEL OF THE DEPARTMENT OF DEFENSE
           DIRECTOR, COST ASSESSMENT AND PROGRAM EVALUATION
           INSPECTOR GENERAL OF THE DEPARTMENT OF DEFENSE
           DIRECTOR, OPERATIONAL TEST AND EVALUATION
           CHIEF INFORMATION OFFICER OF THE DEPARTMENT OF DEFENSE
           ASSISTANT SECRETARY OF DEFENSE FOR LEGISLATIVE AFFAIRS
           ASSISTANT TO THE SECRETARY OF DEFENSE FOR PUBLIC AFFAIRS
           DIRECTOR, NET ASSESSMENT
           DIRECTORS OF THE DEFENSE AGENCIES
           DIRECTORS OF THE DOD FIELD ACTIVITIES

SUBJECT: Directive-type Memorandum (DTM) 19-008, "Expedited Screening Protocol (ESP)"

References: See Attachment 1.

Purpose.  This DTM:

- Implements policy, assigns responsibilities, and prescribes procedures by which the Department of Defense implements the Expedited Screening Protocol (ESP)—uniform and consistent standards for a centralized process for the screening and vetting of individuals requiring access to DoD systems, facilities, personnel, information, or operations for allegiance, foreign preference, or foreign influence concerns.

*DTM-19-008, July 30, 2019*

- Implements the policies prescribed in DoD Instruction (DoDI) 1304.26 and in Section 5.2(a) of Executive Order (E.O.) 12968 for an applicant where a conditional offer of enlistment, induction, or appointment is withdrawn for failure to obtain favorable ESP results.

- Establishes the implementation of ESP consistent with relevant governing documents enumerated in Attachment 1.

- Is effective July 30, 2019 and supersedes any contradictory guidance in DoD Instruction 1304.26, DoD Instruction 1332.14, and DoD Manual (DoDM) 5200.02. These DoD issuances will be updated to comply with this DTM. The Military Departments and the Coast Guard will implement within 30 days of the effective date.

- Will be reevaluated within 6 months of the effective date and expire effective July 30, 2020. Subject to any judicial orders, the October 13, 2017 Office of the Under Secretary of Defense for Personnel and Readiness memorandum shall be held in abeyance upon the issuance of this DTM. Based on the results of subsequent ESP reevaluation, the October 13, 2017 Office of the Under Secretary of Defense for Personnel and Readiness memorandum will be terminated, held in abeyance for an additional period, or reinstated, as appropriate.

<u>Applicability.</u>   This DTM applies to:

- OSD, the Military Departments (including the Coast Guard at all times, including when it is a Service in the Department of Homeland Security, by agreement with that Department), the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD.

- Applicants for military service who enter into a contract for enlistment, induction, or appointment, and Service members with an open initial national security background investigation.

<u>Definitions.</u>   See Glossary.

<u>Policy.</u>   It is DoD policy that:

- Military Departments and the Coast Guard will account for all Service members and those individuals who have contracted into the Delayed Entry Program (DEP) and the Delayed Training Program (DTP), through their respective security managers, who have a military owning or servicing relationship in the DoD system of record, the Joint Personnel Adjudication System, or its successor system. This relationship is maintained for all Service

*DTM-19-008, July 30, 2019*

    members, including Coast Guard personnel, from the time they are submitted for their first investigations until they separate from their respective Armed Forces.

- All applicants for military service who enter into a contract for service and all Service members with an open initial national security background investigation will be referred for ESP if review of their Standard Form 86 (SF-86) indicates a need to screen for potential risk concerning allegiance to the United States, foreign preference, or foreign influence concerns. ESP will augment and enhance vetting mechanisms used to inform military service eligibility determinations pertaining to enlistment, induction, or appointment within the Military Departments and the Coast Guard.

- Consistent with the authorities and guidance set forth in E.O. 13764, Section 1564b of Title 10, U.S.C., the Federal Investigative Standards, and Section 925 of Public Law 115-91, this process will be:

    o Applied to military accession populations with open initial national security background investigations. These individuals will be referred for ESP if a need to screen for potential risks associated with allegiance to the United States, foreign preference, or foreign influence concerns is identified through a review of their Standard Form (SF) 86.

    o Applied to identify the above potential risk indicators and meet requirements and guidelines outlined in the Federal Investigative Standards for Tier 3 / Tier 5 investigations and Guidelines A, B, and C of the National Adjudicative Guidelines found in Security Executive Agent Directive 4.

- Nothing in this DTM:

    o Changes policies governing National Security Determinations.

    o Precludes DoD from using ESP for other purposes, including, but not limited to, support of vetting processes that inform decisions for national security purposes (e.g., eligibility for or access to classified information or to hold a sensitive position), for suitability and fitness, and for purposes of issuing a federal identity credential in accordance with applicable law and policy.

   <u>Responsibilities.</u>  See Attachment 2.

   <u>Procedures.</u>  See Attachment 3.

   <u>Information Collection Requirements.</u>   The requirement for data collection in this DTM does not require licensing with a report control symbol in accordance with Paragraph 1.b.(13) in Enclosure 3 of Volume 1 of DoDM 8910.01.

*DTM-19-008, July 30, 2019*

    <u>Releasability.</u>  Cleared for public release.  Available on the Directives Division Website at https://www.esd.whs.mil/DD/.

Joseph D. Kernan
Under Secretary of Defense for Intelligence

James N. Stewart
Assistant Secretary of Defense for Manpower and Reserve Affairs, Performing the Duties of the Under Secretary of Defense for Personnel and Readiness

Attachments:
As stated

cc:
Secretary of Homeland Security
Commandant of the United States Coast Guard
Director, Defense Counterintelligence and Security Agency

*DTM-19-008, July 30, 2019*

# ATTACHMENT 1

# REFERENCES

DoD Instruction 1304.26, "Qualification Standards for Enlistment, Appointment, and Induction," March 23, 2015, as amended

DoD Instruction 1332.14, "Enlisted Administrative Separations," January 27, 2014, as amended

DoD Instruction 1332.30, "Commissioned Officer Administrative Separations," May 11, 2018, as amended

DoD Manual 5200.02, "Procedures for the DoD Personnel Security Program (PSP)," April 3, 2017

DoD Manual 8910.01, Volume 1, "DoD Information Collections Manual:  Procedures for DoD Internal Information Collections," June 30, 2014, as amended

Executive Order 12968, "Access to Classified Information," August 2, 1995

Executive Order 13764, "Amending the Civil Service Rules," January 17, 2017

Executive Order 13869, "Transferring Responsibility for Background Investigations to the Department of Defense," April 24, 2019

Federal Investigative Standards, December 2012

Office of the Under Secretary of Defense for Personnel and Readiness Memorandum, "Military Service Suitability Determinations for Foreign Nationals Who Are Lawful Permanent Residents," October 13, 2017

Public Law 115-91, Section 925, "National Defense Authorization Act for Fiscal Year 2018," April 2, 2018

Security Executive Agent Directive 4, "National Security Adjudicative Guidelines," June 8, 2017

United States Code, Title 10, Section 1564b

*DTM-19-008, July 30, 2019*

## ATTACHMENT 2

## RESPONSIBILITIES

1. ASSISTANT SECRETARY OF DEFENSE FOR MANPOWER AND RESERVE AFFAIRS. Under the authority, direction, and control of the Under Secretary of Defense for Personnel and Readiness, the Assistant Secretary of Defense for Manpower and Reserve Affairs, through the Director, DoD Accessions Policy will, in coordination with Military Department and Coast Guard counterparts, oversee and assess the ESP performance as it relates to military accessions screening for eligibility for enlistment, induction, or appointment.

2. DIRECTOR FOR DEFENSE INTELLIGENCE (COUNTERINTELLIGENCE, LAW ENFORCEMENT, AND SECURITY). Under the authority, direction, and control of the Under Secretary of Defense for Intelligence, the Director for Defense Intelligence (Counterintelligence, Law Enforcement, and Security) will provide guidance and oversight for the ESP under the DoD Personnel Security Program. Additionally, in coordination with Director, DoD Accessions Policy and with Military Department and Coast Guard counterparts, will oversee and assess ESP performance with respect to military accessions screening.

3. DIRECTOR, DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY. Under the authority, direction, and control of the Under Secretary of Defense for Intelligence, the Director, Defense Counterintelligence and Security Agency, will:

    a. Establish training and other policies, procedures, and personnel requirements for the Expedited Screening Center (ESC), and other organizational entities to execute and achieve the requirements of this DTM.

    b. In coordination with the Director for Defense Intelligence (Counterintelligence, Law Enforcement, and Security), establish a centralized capability for using ESP to identify and mitigate potential high risk indicators associated with allegiance, foreign preference, and foreign influence concerns within military accessions populations.

    c. Provide metrics and other data to the Director for Defense Intelligence (Counterintelligence, Law Enforcement, and Security) and to the Director, DoD Accessions Policy, to be shared with the Military Departments and Military Services, regarding ESP timelines and trends for accessions as defined by this DTM.

4. SECRETARIES OF THE MILITARY DEPARTMENTS. The Secretaries of the Military Departments:

    a. Will, for their respective departments, establish training and other policies, procedures and, for Fiscal Year 2019, personnel requirements to execute and achieve the requirements of this DTM.

    b.  May waive certain requirements as described in Attachment 3.

5.  <u>COMMANDANT OF THE UNITED STATES COAST GUARD</u>.  The Commandant of the United States Coast Guard:

    a.  Will, as necessary and appropriate, integrate the results of ESP into its adjudication of personnel vetting in accordance with this DTM, DoDI 1304.26, and DoDM 5200.02.

    b.  May waive certain requirements as described in Attachment 3.

*DTM-19-008, July 30, 2019*

## ATTACHMENT 3

## ESP PROCESS AND TIMELINESS GOALS

1. <u>GENERAL</u>

    a. The requirements in this attachment shall be fully achieved by 12 months from the date of issuance of this DTM.

    b. All applicants for military service who enter into a contract for service and all Service members with an open initial national security background investigation will be referred for ESP when information the individual provides on the SF-86 signals a need to screen for concerns regarding allegiance to the United States, foreign preference, or foreign influence, as follows:

        (1)  Responses to Questions 9, 10, 11, 12, 15.3, 17, 18, 19, 20a, 20b, 25, or 29 of the SF-86 signal need to screen for potential risk indicators associated with allegiance to the United States, foreign preference, or foreign influence concerns.

        (2)  Responses to Question 20c of the SF-86 will be used as a secondary indicator until this question is incorporated into the protocol as a primary indicator no later than October 1, 2020.

2. <u>ESP PROCEDURES</u>.  In accordance with the following procedures, the ESP will be implemented in two phases to minimize disruption to military accessions and to allow for evaluation of the protocol.

    a. <u>ESP Initiation (Phase 1), Through Fiscal Year 2019</u>.

        (1)  Individuals will be held from shipping to initial entry training (IET), held at current duty station, or held at a Service-designated staging location when initial ESP results reveal potential high risk indicators regarding allegiance to the United States, foreign preference, or foreign influence concerns.

        (2)  Hold statuses, unless waived by the Secretary concerned, or the Commandant of the Coast Guard, as the case may be, per Section 3 of this DTM, will be in effect until a favorable ESP result is rendered.  Actions taken in response to Final ESP results are addressed in Sections 2.d and 2.c of this attachment.

    b. <u>ESP Initiation (Phase 2), Effective During Fiscal Year 2020</u>.

        (1)  Phase 2 initiation will be subject to analysis and review by the Offices of the Under Secretary of Defense for Personnel and Readiness and of the Under Secretary of Defense for Intelligence.

(2)  Individuals referred to ESP will not proceed to IET (either basic or advanced training) until any identified potential high risk indicators have been mitigated and a favorable ESP result is rendered, or until the Military Department concerned or the Coast Guard, as the case may be, makes a determination to retain the individual from military service.

(3)  Current service members who are referred to ESP will remain at their present duty station or service-designated staging location until any identified potential risk indicators have been mitigated and a favorable ESP result is rendered, or until the Military Department concerned or the Coast Guard, as the case may be, makes a determination to retain or separate the individual from military service.

c.  <u>Final ESP Results.</u>  Final ESP results, regardless of outcome, will be forwarded to the National Background Investigation Bureau or the appropriate investigative service provider, and the Department of Defense Consolidated Adjudications Facility (DoD CAF) or the appropriate adjudicative entity to inform Tier 3 or Tier 5 background investigations.

(1)  <u>No Potential High Risk Indicators.</u>  If final ESP results do not identify any potential high risk indicators, ESC personnel will annotate the system of record accordingly.

(2)  <u>Potential High Risk Indicators Are Mitigated.</u>  If final ESP results identify potential high risk indicators and ESC personnel identify mitigating information, the individual will not need to be further processed in ESP.  ESC personnel will annotate the system of record accordingly with the favorable result.

(3)  <u>High Risk Indicators Are Not Mitigated.</u>  If final ESP results identify potential high risk indicators and ESC personnel cannot identify mitigating information, ESC personnel will annotate the system of record with the unfavorable result and notify the Military Department concerned or the Coast Guard, as the case may be, accordingly.

d.  <u>Notifications and Separation Procedures.</u>

(1)  <u>Unfavorable ESP Results Notification.</u>  If the ESP produces unfavorable results, the ESC will notify the Military Department concerned or the Coast Guard, as the case may be.  The notification will read:  "[Named Individual] has high risk indicators with no available mitigating information."

(2)  <u>Military Department and Coast Guard Actions.</u>

(a)  After receiving an unfavorable ESP result, the Military Department concerned or the Coast Guard, as the case may be, will determine whether the individual continues to meet eligibility requirements for enlistment, induction, or separation in accordance with DoDI 1304.26, and whether the individual should be separated from military service in accordance with DoDI 1332.14 or DoDI 1332.30.  The enlistment, induction, or appointment criteria in Paragraph 2.h.(6) in Enclosure 3 of DoDI 1304.26 is amended to include the following criteria:

*DTM-19-008, July 30, 2019*

          1.  Receives an unfavorable result from a review of information that revealed the individual presents an unacceptable risk to good order and discipline within the Armed Forces.

          2.  Receives an unfavorable determination by an adjudicative entity on a completed Tier 3 or higher-level investigation adjudicated according to the National Security Standards set forth in E.O. 12968, while in the Delayed Entry Program, the Delayed Training Program, or otherwise in entry-level status.

        (b)  If a Tier 3 or Tier 5 background investigation results an unfavorable national security determination from an adjudicative entity, the Military Departments and the Coast Guard, after receiving the notification, will initiate separation proceedings in accordance with DoDIs 1332.14 and DoDI 1332.30, as amended by this DTM.

      (3)  <u>Administrative Separation Procedures</u>.  The procedures in Section 5.2(a) of E.O. 12968 will not apply to Service members who are being considered for administrative separation under DoDI 1332.14 or DoDI 1332.30, or for any other reason other than denial of eligibility for access to classified information or to hold a national security position.  The policy in Paragraph 5 in Enclosure 3 of DoDI 1332.14 will be followed and is amended with the following policy for unfavorable results or determinations:

        (a)  <u>Separation from the DEP</u>.

          1.  An individual who is in the DEP may be separated because of ineligibility for enlistment in accordance with DoDI 1304.26, or the additional standards prescribed by the Secretary of the Military Department concerned or by the Commandant of the Coast Guard, or upon his or her request when authorized by the Secretary of the Military Department concerned or by the Commandant of the Coast Guard, as the case may be.  This includes individuals in DEP who have been determined to no longer meet eligibility requirements for enlistment or induction based upon unfavorable ESP results.

          2.  Paragraph 4.e. in Enclosure 3 of DoDI 1332.14 shall be amended to require that the individual be notified of the proposed separation and the reasons for it.  If the reasons include classified information, unclassified summaries may be used; however, any summaries derived from classified information will be consistent with the national security interests of the United States and other applicable law.

        (b)  <u>Entry-Level Performance and Conduct Separations</u>.  This paragraph applies to individuals in the Delayed Training Program (DTP) or otherwise in entry-level status.

          1.  An enlisted Service member may be separated while in entry-level status when it is determined that the enlisted Service member: no longer meets the requirements for eligibility for enlistment or induction as specified in DoDI 1304.26; or is unqualified for further military service by reason of unsatisfactory performance, conduct, or both.  Evidence of an enlisted Service member being unqualified may include lack of capability,

lack of reasonable effort, failure to adapt to the military environment, or minor disciplinary infractions.

2. When separation of an enlisted Service member in entry-level status is warranted by failure to meet the requirements for eligibility for enlistment or induction; or unsatisfactory performance, conduct, or both, the enlisted Service member should be processed for entry-level separation. However, entry-level status does not preclude separation for any other reason authorized by this issuance when such separation is warranted by the circumstances of the case.

3. Counseling and rehabilitation requirements are normally important aspects of the reason for separation. Except in separations based on failure to meet the requirements for eligibility for enlistment or induction, separation processing may not be initiated until the enlisted Service member has been formally counseled concerning those deficiencies as reflected in appropriate counseling or personnel records. An enlisted Service member in entry-level status should not be separated for unsatisfactory performance, minor disciplinary infractions, or both, when this is the sole reason, unless appropriate efforts at rehabilitation have been made under standards prescribed by the Secretary of the Military Department concerned or by the Commandant of the Coast Guard.

(c) <u>Administrative Separation Procedures for Service Members No Longer in an Entry Level Status</u>. An Armed Force will use Secretarial Plenary Authority for enlisted Service members who are not in the DEP or DTP or are otherwise not in entry-level status, who have been determined to no longer meet eligibility requirements for enlistment or induction based on the unfavorable ESP results.

(4) <u>Notice of Separation.</u> Enlisted Service members who are facing separation, based on unfavorable ESP results in accordance with DoDI 1332.14 will be provided notice of intended separation consistent with Paragraph 2 in Enclosure 5 of DoDI 1332.14.

(a) The individual will be notified in writing of:

1. The basis of the proposed separation, including the circumstances upon which the separation is based and a reference to this DoDI and any applicable provisions of the appropriate Military Department's or the Coast Guard's implementing regulation, as the case may be. If the basis includes classified information, unclassified summaries may be used. However, any summaries derived from classified information will be consistent with the national security interests of the United States and other applicable law.

2. Whether the proposed separation could result in discharge, release from active duty to a Reserve Component, transfer from the Selected Reserve to the Individual Ready Reserve, release from custody or control of the Military Services, or other form of separation.

              3.  The least favorable characterization of service or description of separation authorized for the proposed separation.

              4.  The right to obtain copies of documents that will be forwarded to the separation authority supporting the basis of the proposed separation.  Classified information in such documents may be provided to the individual in unclassified summarized format.  However, any summaries derived from classified information provided to the individual shall be consistent with the national security interests of the United States and other applicable law.

          (b)  Consistent with DoDI 1332.14 (as amended by this DTM), individuals facing administrative separation from military service based on unfavorable ESP results will receive the notice in the Figure.

---

Figure.  Unfavorable ESP Notice

"A review of information indicates that you present an unacceptable risk to good order and discipline within the Armed Forces and that it is not in the best interests of the [Military Department or the Coast Guard] for you to continue to serve. Accordingly, you are being notified that 30 days from your receipt of this memorandum, we intend to take action to administratively separate you from the Armed Forces."

---

       (5)  <u>Separation Procedures for Commissioned Officers.</u>

          (a)  A commissioned officer who receives an unfavorable final ESP result will be separated from the Military Department concerned or the Coast Guard, as the case may be, in accordance with regulations outlined in Section 3 of DoDI 1332.30.

          (b)  The Military Department or the Coast Guard will reject an application for an officer commission by an applicant who receives unfavorable ESP results. The applicant for a commission will only receive notice that his or her application has been rejected for failure to meet initial security screening requirements. The separation procedures specified in Paragraph 2.d.(3) in this attachment do not apply in these circumstances.

3. <u>WAIVERS</u>

   a. The Secretaries of the Military Departments and the Commandant of the Coast Guard have authority to waive the requirements to separate or disqualify individuals with unfavorable ESP results on a case by case basis.  A waiver may only apply to a single individual and cannot be applied to groups.  Waivers must explain why the individual is deemed mission essential while acknowledging the associated risks identified through the ESP.

   b. The Secretaries of the Military Departments and the Commandant of the Coast Guard may delegate, in writing, to an Assistant Secretary or to a Deputy Chief of Staff, respectively, the

authority to grant waivers to retain an individual with high risk indicators and to accept the risk on behalf of the Secretary of the Military Department concerned, or the Commandant of the Coast Guard, as the case may be.

    c.  Any waiver decision by the Secretaries of the Military Departments and the Commandant of the Coast Guard will be informed by an executive summary of ESP results to be provided by the ESC upon request.

    d.  The Secretaries of the Military Departments and the Commandant of the Coast Guard, or their designees, will provide copies of all approved ESP waivers to the Under Secretary of Defense for Intelligence and the Under Secretary of Defense for Personnel and Readiness explaining why the accession or retention of the individual is in the national security interest of the respective Military Service.

4.  <u>OVERALL ESP PROCESS TIMELINESS GOALS</u>

    a.  If there are no potential high risk indicators identified through the ESP, the goal for completion is within 14 days of the date on which the ESC received SF-86 information (approximately 7 to 10 days after the SF-86 is completed, submitted, and any information inconsistencies are resolved).  However, if the ESP identifies potential high risk indicators, the goal for completion of analysis and potential mitigation is within 90 days of receipt of SF-86 data by the ESC.

    b.  This protocol should not unduly affect individuals proceeding to IET in a timely manner.  All efforts will be made to minimize the impact to the Military Department and Coast Guard training pipelines, while identifying and mitigating risks through the ESP.

    c.  Metrics, data, and trends regarding ESP will be provided by the Director, Defense Counterintelligence and Security Agency, to the Director for Defense Intelligence (Counterintelligence, Law Enforcement, and Security), and the Director, DoD Accessions Policy, to be shared with Military Departments and the Coast Guard.

5.  <u>PROCESS REVIEW.</u>  The Offices of the Under Secretaries of Defense for Intelligence and of Personnel and Readiness will conduct a process review regarding the ESP implementation to determine effectiveness and resourcing in Fiscal Year 2020.

*DTM-19-008, July 30, 2019*

# GLOSSARY

## PART I.  ABBREVIATIONS AND ACRONYMS

| | |
|---|---|
| DEP | Delayed Entry Program |
| DoD CAF | Department of Defense Consolidated Adjudications Facility |
| DoDI | DoD instruction |
| DoDM | DoD manual |
| DTM | directive-type memorandum |
| DTP | Delayed Training Program |
| E.O. | Executive order |
| ESC | Expedited Screening Center |
| ESP | Expedited Screening Protocol |
| IET | Initial Entry Training |
| SF | Standard Form |

## PART II.  DEFINITIONS

These terms and definitions are for the purpose of this issuance.

ESP.  A set of procedures used to vet an individual who provides responses to certain SF-86 questions that raise potential allegiance, foreign influence, or foreign preference concerns, specifically sections 9, 10, 11, 12, 15.3, 17, 18, 19, 20a, 20b, 25, or 29, and section 20c as a secondary factor initially.

open initial national security background investigation.  A national security background investigation that is initiated when a Service member first accesses into the Armed Forces, and the investigative service provider has not forwarded it to the adjudicative entity for adjudication.

eligibility. Eligibility for enlistment, appointment, and induction into the Military Services as outlined in DoDI 1304.26 and suitability as described in E.O. 12968.

potential high risk indicator.  Data that meets or exceeds predetermined expandable focused investigation thresholds, outlined in the Federal Investigative Standards (as amended) pertaining to adjudicative guideline regarding allegiance to the United States, foreign influence, and foreign preference concern.