IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGE SAMMA *et al.*, on behalf of themselves and others similarly situated,

    *Plaintiffs*,

    v.

UNITED STATES DEPARTMENT OF DEFENSE *et al.*,

    *Defendants*.

No. 1:20-cv-01104-ESH

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT AND CLASS CERTIFICATION**

Jennifer Pasquarella
Michelle (Minju) Cho
American Civil Liberties Union Foundation
   of Southern California
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5236
jpasquarella@aclusocal.org
mcho@aclusocal.org

Scarlet Kim (D.D.C. Bar No. NY0329)
Noor Zafar*
Jonathan Hafetz (D.D.C. Bar No. NY0251)
Brett Max Kaufman (D.D.C. Bar No. NY0224)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
scarletk@aclu.org
nzafar@aclu.org
jhafetz@aclu.org
bkaufman@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
   of the District of Columbia
915 15th Street, NW, 2nd Floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

Pursuant to the Court's June 27, 2020 Order, ECF No. 30, Plaintiffs hereby respond to the questions raised by the Court in its Order.

## I. RESPONSES TO THE COURT'S QUESTIONS

**1. Is it correct you are only challenging Section I of the 10/13/2017 N-426 Policy?**

Yes, Plaintiffs only challenge Section I of the N-426 Policy. Plaintiffs originally challenged Sections I and II on the basis that Plaintiffs Park and Lee had enlisted prior to October 13, 2017 and were therefore subject to Section II. The parties now agree that because Plaintiffs Park and Lee were accessed after October 13, 2017—by shipping to basic training as active duty service members—they are subject to Section I, as are the six other Plaintiffs, who enlisted after October 13, 2017. Thus, Plaintiffs challenge only Section I of the Policy.

**2. Is it correct that you have no claim on behalf of MAVNI Reservists?**

Yes, Plaintiffs bring no claims on behalf of MAVNI Reservists.

Plaintiffs bring no claims on behalf of MAVNI Reservists because the *Kirwa* class covers MAVNI Reservists, and Plaintiffs seek to extend the same relief in *Kirwa* to non-citizens seeking to naturalize under 8 U.S.C. § 1440 who fall outside the *Kirwa* class. *See* Reply Mem. in Supp. of Pls.' Mot. for Class Cert. 11, June 8, 2020, ECF No. 26 ("Class Cert. Reply") (proposing class definition of individuals who (a) are non-citizens serving in the U.S. military; (b) have requested but not received a certified Form N-426; and *(c) are not Selected Reserve MAVNIs covered by the Kirwa lawsuit*). The core of Plaintiffs' challenge is identical to the core of the challenge in *Kirwa*—whether Defendants must certify an N-426 based on the existing service records of a non-citizen seeking naturalization under section 1440. *Compare, e.g.*, Am. Compl. ¶ 181, June 8, 2020, ECF No. 24 ("Plaintiffs have a right to receive N-426 certifications of honorable service to apply for naturalization pursuant to section 1440 based on their current service records.") *with*

Am. Compl. at ¶ 99, *Kirwa v. U.S. Dep't of Def.*, No. 17-1793, (D.D.C Nov. 3, 2017), ECF No. 33 ("8 U.S.C. § 1440 establishes a clear, limited, and purely ministerial role for DoD in the naturalization process. DoD's role is to verify, by way of Form N-426, whether a soldier is or is not serving honorably based on that soldier's existing service record."). Section 1440 provides an expedited path to citizenship to "*[a]ny* . . . noncitizen" who has served honorably in the Selected Reserve or active duty. 8 U.S.C. § 1440(a) (emphasis added). It recognizes no distinction between types of non-citizens, whether they be MAVNIs or LPRs, nor does it articulate different criteria that different types of non-citizens must meet in order to seek an N-426 and apply for naturalization. Thus, section 1440's requirement that Defendants certify the N-426s of non-citizens based on their existing service records applies equally to *all* non-citizens in the Selected Reserve or serving active duty seeking naturalization under this provision. However, because the relief in *Kirwa* is limited to MAVNI Reservists, Plaintiffs seek to extend that same relief to other non-citizens seeking to naturalize under section 1440.

  **3.**  **Are Plaintiffs challenging the application of Section I to LPR Reservists? If so, which requirements?**

Yes, Plaintiffs challenge the minimum service, security screening, and O-6 requirements in Section I, as they apply to LPR Reservists.

First, Plaintiffs challenge the minimum service requirement, which requires LPR Reservists to complete "at least one year of satisfactory service towards non-regular retirement in accordance with Department of Defense Instruction 1215.07, . . . inclusive of the member's successful completion of basic training." SAMMA_0004. Plaintiffs challenge both the durational and active duty components of this requirement.[1] The durational component requires that

---

[1] The Court may recall that the original dispute in *Kirwa* concerned "DOD's position that 'active duty' was required for certification of . . . an N-426." *Kirwa v. U.S. Dep't of Def.*, 285 F. Supp.

Reservists serve at least one year before they may obtain an N-426. The active duty component requires that Reservists complete basic training, which constitutes active duty, before they may obtain an N-426. *See Kirwa*, 285 F. Supp. 3d at 29 n.8 ("[Initial Entry Training] encompasses 'basic training,' also referred to as 'basic combat training' (BCT). DOD considers IET to be active duty.").[2]

In their responses to the Court's questions, Defendants define the one-year requirement as including "drilling time, so long as the reservist has met the statutory requirements under 10 U.S.C. § 10147(a) to complete one year in active status in the Reserves, which includes some active-duty training time." Defs.' Am. Suppl. Brief in Resp. to Pls.' Mot. for Class Certification 3 ("Defs.' Am. Suppl. Brief"), July 1, 2020, ECF No. 32-1. Defendants did not clarify, however, whether a Reservist who begins drilling prior to shipping to basic training may count that period of time towards the one-year requirement. In their Sur-Reply to Plaintiffs' Motion for Class Certification 8 ("Defs.' Sur-Reply"), ECF. No 29, and during the June 26, 2020 teleconference, Ex. 1, at 49:2–16, 50:16–51:5, 52:2–9, Defendants suggest that Reservists must ship to basic training before the one-year clock begins ticking. If so, the one-year requirement will, in effect, be more than one year (and in some cases, significantly more), given that many Reservists begin drilling before they ship to basic training.

---

3d 21, 34 (D.D.C. 2017). Defendants have resurrected this dispute and asserted that they may impose such a requirement on LPR Reservists. *See* Defs.' Mem. in Supp. of Cross-Mot. for Summ. J. 33, May 22, 2020, ECF No. 20 ("[T]he only criteria imposed by Congress [in 8 U.SC. § 1440] is that the service must have been (1) honorable and (2) in an active-duty status.").

[2] For the reasons explained below, *see infra* 5–6, Plaintiffs are not required to specifically allege that they were told they were subject to each of the individual requirements in the N-426 Policy. Nevertheless, Plaintiff Isiaka, who is an LPR Reservist, asserts that he was told that he had to attend and complete basic combat and advanced individual training before he could receive his N-426. *See* Compl. ¶ 103; Am. Compl. ¶ 107.

Second, Plaintiffs challenge the security screening requirement, which requires that LPR Reservists complete "prescribed screening requirements set forth in . . . applicable DoD or Military Department policy," before they may obtain an N-426. SAMMA_0003. In their responses to the Court's questions, Defendants explain that under a current July 30, 2019 Directive, LPR Reservists are required to complete the Expedited Screening Protocol ("ESP"). Defs.' Am. Suppl. Br. 1. Defendants also claim that "DoD is presently in Phase 1 of ESP Initiation," under which LPR Reservists may ship to basic training even if they have not completed the ESP (under phase 2, they may not). Defs.' Am. Suppl. Br. 2.[3] However, because the central dispute in this case concerns whether Defendants must certify an N-426 based on a non-citizen's existing service records, the operative question is not whether LPR Reservists are required to complete the ESP before shipping to basic training, but whether they must complete the ESP *before they may obtain an N-426*. *See Kirwa*, 285 F. Supp. 3d at 39 ("[N]ational security issues *may* justify enhanced security screening, but N-426 certification is not related to that process."). Of course, if LPR Reservists are required to complete the ESP before shipping to basic training, they may be required to wait an even longer period of time before they may obtain an N-426. But the key question is whether completing the ESP is a prerequisite to obtaining an N-426. Because it is Plaintiffs' understanding that LPR Reservists must complete the ESP before they may obtain an N-426, Plaintiffs challenge the application of this requirement to them.[4]

---

[3] Defendants cite to a schedule in the ESP Directive for the assertion that "DoD is presently in Phase 1." Defs.' Am. Suppl. Brief  2. According to that schedule, however, DoD should currently be in Phase 2. Phase 1 applies through Fiscal Year 2019, which ended on September 30, 2019. *See* Defs.' Am. Suppl. Brief, Ex. 2, at 8. Phase 2 applies during Fiscal Year 2020, which began on October 1, 2019 and will end on September 30, 2020. *See* Defs.' Am. Suppl. Brief, Ex. 2, at 8.

[4] Plaintiffs confine their challenge to the requirement that LPR Reservists who have begun drilling complete the ESP before they may obtain an N-426. They do not challenge the

4

Finally, Plaintiffs challenge the O-6 requirement, which requires that the Secretary of the relevant military branch or "a commissioned officer serving in the pay grade of O-6 or higher" to whom the Secretary has delegated certification authority certify N-426s. SAMMA_0002.

Plaintiffs have adequately pled a challenge to the security screening requirement. *See* Compl. ¶¶ 71–72, Apr. 28, 2020, ECF No. 1 (pleading that "[i]n direct contravention of 8 U.S.C. § 1440, the N-426 Policy mandates that service members . . . may not receive N-426 certifications . . . until they meet a series of new requirements" and reciting amongst those requirements, the security screening requirement); Am. Compl. ¶¶ 73–74 (same). Defendants assert that Plaintiffs may only plead a challenge to an N-426 Policy requirement based on whether "they were told that they have not met" that specific requirement. Defs.' Sur-Reply 7–8. But what is required is that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs meet that standard here. They have alleged that Defendants implemented the N-426 Policy, the Policy included a security screening requirement, and the security screening requirement prevents non-citizen service members, such as Plaintiffs, from obtaining an N-426. *See* Compl. ¶¶ 71–72; Am. Compl. ¶¶ 73–74.[5] Plaintiffs' pleadings therefore gave Defendants "fair notice" that Plaintiffs were challenging the security screening requirement. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

application of the ESP, or prior security screening requirements, to active duty LPRs or MAVNIs.

[5] Plaintiffs are not required to allege anything further regarding the security screening requirement to demonstrate that they have adequately pled a challenge to this requirement. However, Plaintiff Isiaka, who is an LPR Reservist, has also alleged that he has never been told whether he has completed his background screening requirement and therefore has no basis to conclude that it has not contributed to the delay in obtaining an N-426. *See* Am. Compl. ¶ 108; *see also* Isiaka Suppl. Decl. ¶ 2, May 29, 2020, ECF No. 21-14.

Plaintiffs acknowledge that the current Administrative Record does not include documents pertaining to the N-426 Policy's security screening requirement as applied to LPR Reservists. In order to avoid the need to supplement the Administrative Record, Plaintiffs propose to limit their challenge to the security screening requirement to three of its four APA claims, which do not require the Administrative Record: (1) unlawful withholding of agency action, (2) exceeds statutory authority, and (3) notice-and-comment rulemaking.

### 4. Are Plaintiffs challenging the application of Section I to MAVNIs who enlist in Active Components? If so, which requirements and who would be the class representative?

Yes, Plaintiffs challenge two of the Section I requirements, as they apply to active duty MAVNIs. Plaintiffs challenge the minimum service requirement, which requires all non-citizens serving active duty to complete "at least 180 consecutive days of active duty service, inclusive of the successful completion of basic training," SAMMA_0003, and the O-6 requirement. Plaintiffs challenge the application of these identical requirements to active duty LPRs.

Any of the Plaintiffs serving active duty, whether LPR or MAVNI, can serve as a class representative for active duty MAVNIs because they satisfy the commonality and typicality requirements. Commonality requires that a uniform policy affect all class members and result in common harms. *See* Pls.' Mot. for Class Cert. 8–9, Apr. 28, 2020, ECF No. 5. Typicality requires that a class representative suffer the same injury from the same course of conduct as other class members. *Id*. at 10–11. Neither commonality nor typicality are destroyed by factual variations. *Id*. at 8, 11.

Here, Plaintiffs Gunawan and Machado—both active duty LPRs—are adequate class representatives for active duty MAVNIs. The claims of active duty LPRs and active duty MAVNIs arise from identical requirements—the minimum service and O-6 requirements—and

are based on the same legal theories. Indeed, the N-426 Policy recognizes no distinction between LPRs and MAVNIs with respect to these requirements. *See* SAMMA_0002-03. Moreover, the injuries that active duty LPRs and active duty MAVNIs have suffered—namely, their inability to apply for naturalization under 8 U.S.C. § 1440—also arise from this identical course of conduct. Whether a Plaintiff or a class member happens to be an active duty LPR or active duty MAVNI is simply a factual variation that fails to disturb the interest and injury that all Plaintiffs serving active duty share with each other.

However, should the Court determine that an active duty MAVNI must act as a class representative for active duty MAVNIs who seek to challenge the minimum service and O-6 requirements, Plaintiff Lee may serve as that representative. Plaintiff Lee has both standing to challenge these requirements, and her claims are not moot such that she cannot serve as a class representative. First, Plaintiff Lee has standing to challenge these requirements because, even though she completed the minimum service requirement prior to the filing of the complaint on April 28, 2020, she had not received an N-426 as of that date. Thus, her injury—the delay to her ability to seek naturalization—was caused at least in part by the minimum service and O-6 requirements. The court in *RIL-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015), confronted a similar scenario and held that plaintiffs had standing. *RIL-L* concerned a challenge to an Immigrations and Customs Enforcement ("ICE") policy, requiring the agency to factor in deterrence when making custody determinations for asylum seekers. The defendants argued that the plaintiffs lacked standing because their continued detention could be due to factors other than the policy. The Court rejected this argument, finding that "ICE applies this factor in its custody determinations" and that factor, "at the very least, diminishes the likelihood of Plaintiffs' release." *Id*. at 178. Similarly here, Plaintiff Lee was subject to the minimum service and O-6

requirements and those requirements, at the very least, contributed to her delay in obtaining an N-426 and seeking naturalization.

Second, and separate from the question of standing, Plaintiff Lee may serve as a class representative for active duty MAVNIs even if she obtained an N-426 prior to class certification. The Court may relate the class certification motion back to the filing of the complaint—when Plaintiff Lee's individuals claims were live—because Plaintiffs' claims are inherently transitory. *See* Class Cert. Reply 35.

## II.  PLAINTIFFS' CLAIMS

In light of the responses above and in order to facilitate the Court's understanding of the nature and scope of Plaintiffs' claims, Plaintiffs map their claims in the chart below:

|  | **Minimum Service** | **Security Screening** | **O-6** |
|---|---|---|---|
| **LPR Reservists** | Challenge under:<br><br>(1) unlawful withholding;<br>(2) arbitrary and capricious;<br>(3) exceeds statutory authority;<br>(4) notice-and-comment rulemaking | Challenge under:<br><br>(1) unlawful withholding;<br>(2) exceeds statutory authority;<br>(3) notice-and-comment rulemaking | Challenge under:<br><br>(1) arbitrary and capricious;<br>(2) notice-and-comment rulemaking |
| **LPR Active Duty** | Challenge under:<br><br>(1) unlawful withholding;<br>(2) arbitrary and capricious;<br>(3) exceeds statutory authority;<br>(4) notice-and-comment rulemaking | No challenge | Challenge under:<br><br>(1) arbitrary and capricious;<br>(2) notice-and-comment rulemaking |
| **MAVNI Active Duty** | Challenge under:<br><br>(1) unlawful withholding;<br>(2) arbitrary and capricious;<br>(3) exceeds statutory authority;<br>(4) notice-and-comment rulemaking | No challenge | Challenge under:<br><br>(1) arbitrary and capricious;<br>(2) notice-and-comment rulemaking |

### III. SUB-CLASSES

In light of the responses above and in order to facilitate the Court's management of Plaintiffs' proposed class, Plaintiffs propose certification of the following two sub-classes:

> **SUB-CLASS 1:** All individuals who: (a) are lawful permanent residents serving in the Selected Reserve of the Ready Reserve and (b) have requested but not received a certified Form N-426.
>
> **SUB-CLASS 2:** All individuals who: (a) are non-citizens serving in an active duty status in the U.S. military and (b) have requested but not received a certified Form N-426.[6]

Each sub-class satisfies the requirements of Rule 23. *See DL v. District of Columbia*, 302 F.R.D. 1, 10 (D.D.C. 2013) (courts may certify sub-classes at their discretion, as long as each sub-class "independently meet[s] the requirements of Rule 23").

Dated: July 2, 2020

Respectfully submitted,

 /s/ Scarlet Kim

| | |
|---|---|
| Jennifer Pasquarella | Scarlet Kim (D.D.C. Bar No. NY0329) |
| Michelle (Minju) Cho | Noor Zafar* |
| American Civil Liberties Union Foundation | Jonathan Hafetz (D.D.C. Bar No. NY0251) |
| of Southern California | Brett Max Kaufman (D.D.C. Bar. No. NY0224) |
| 1313 West 8th Street | American Civil Liberties Union Foundation |
| Los Angeles, CA 90017 | 125 Broad Street, 18th Floor |
| (213) 977-5236 | New York, NY 10004 |
| jpasquarella@aclusocal.org | (212) 549-2500 |
| mcho@aclusocal.org | scarletk@aclu.org |
| | nzafar@aclu.org |
| | jhafetz@aclu.org |
| | bkaufman@aclu.org |

---

[6] Plaintiffs have not explicitly excluded members of the *Kirwa* class from these sub-class definitions because no members of these sub-classes can be members of the *Kirwa* class, which includes no LPRs or active duty service members.

9

Arthur B. Spitzer (D.D.C. Bar No. 235960)
American Civil Liberties Union Foundation
   of the District of Columbia
915 15th Street, NW, 2nd Floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

*Admitted *pro hac vice*

*Counsel for Plaintiffs*