UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGE SAMMA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-01104-ESH |
| ) | The Honorable Ellen Segal Huvelle |
| UNITED STATES DEPARTMENT OF ) | |
| DEFENSE and MARK ESPER, in his ) | |
| official capacity as Secretary of Defense, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' FURTHER SUPPLEMENTAL BRIEF IN RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

Pursuant to the Court's July 6, 2020 email, Defendants hereby provide the following information in response to the Court's questions:

1. *Is Isiaka governed by Phase I of the July 30, 2019 DTM?*

Yes, Plaintiff Isiaka is governed by Phase I of the July 30, 2019 DTM. DoD has not yet begun Phase II of the DTM, nor is it certain at present when (or if) Phase II will begin.

2. *If Isiaka ships to basic without a completed ESP, will he need a completed ESP to get an N-426?*

No, Plaintiff Isiaka will not need a completed ESP in order to obtain a certified N-426. DoD does not require any LPR service member, including Plaintiff Isiaka, to complete ESP in order to be eligible for N-426 certification.

3. *When does Phase II of the July 30, 2019 DTM go into effect?*

At present, DoD does not have a date certain by which Phase II will go into effect. DoD intends to transition to Phase II when it has the capacity to screen service members in a timely

fashion, so as not to cause unnecessary delays to the accessions process. The transition to Phase II is further subject to "analysis and review by the Offices of the Under Secretary of Defense for Personnel and Readiness and of the Under Secretary of Defense for Intelligence." *See* DTM Attachment 3(2)(b). DoD may also decide never to transition to Phase II and remain in Phase I indefinitely.

4. *Once Phase II goes into effect, will LPR Reservists need a completed ESP before shipping to basic? In order to get an N-426?*

If Phase II of the DTM goes into effect, all service members, including LPR reservists, who are referred to ESP will remain ineligible to ship to basic training "until any identified potential high risk indicators have been mitigated and a favorable ESP result is rendered." July 30, 2019 DTM, Attachment 3(2)(b)(2). Alternatively, a service member may ship to basic if "the Military Department concerned or the Coast Guard, as the case may be, makes a determination to retain the individual from military service." *Id*. In other words, if DoD initiates Phase II and the service member is referred to ESP, then the member must wait until a favorable ESP result is rendered or an exception is made before shipping to basic.

DoD's current policy does not require LPR reservists to have a completed ESP in order to obtain N-426 certification, and DoD does not intend to impose such a requirement in the future. However, given that DoD's current N-426 policy for all LPR service members, active and reservists, requires successful completion of basic training requirements, *see* 10/13/17 Memorandum, Section I(3)(b), as a practical matter, LPR reservists will likely have completed ESP before they will be eligible for N-426 certification, if and when DoD initiates Phase II of the DTM.

5. *If Isiaka ships to basic on August 3, 2020, when will he have satisfied the one-year time-in-service requirement for Section I of the Oct. 13, 2017 N-426 memo?  Does he get any credit for the drilling period from February to July 2020?  Does he have to enter basic training before he can begin a period of credible service?  (See ECF 33, at p.3.)*

The timing of Plaintiff Isiaka's eligibility will depend on how frequently he attends drill, how many points the drilling periods are worth, and whether he attends Basic Combat Training ("BCT"; also referred to in the October 13, 2017 memorandum as "the basic training requirements of the armed force" to which a service member belongs) immediately followed by Advanced Individual Training ("AIT") or takes time between the two (sometimes referred to as "split training").  Collectively, BCT and AIT together are referred to as Initial Entry Training ("IET").

Through June 30, 2020, Plaintiff Isiaka has attended thirteen drills or training periods in the Army's Delayed Training Program ("DTP"), the first being on February 8, 2020.  Defendants below explain two different scenarios by which Plaintiff Isiaka may become eligible for an honorable service determination.

Scenario #1:  Completion of BCT immediately followed by completion of AIT

Typically, reservists who ship to BCT and AIT (or its equivalent if the reservist serves elsewhere other than the Army) without a break between the two will accumulate approximately 180 days of continuous active-duty service because time spent completing IET constitutes active-duty service, with BCT and AIT each lasting roughly 90 days.  Once such a reservist such as Plaintiff Isiaka reaches 180 days of continuous active-service, he or she is no longer in an entry-level status and can receive an honorable service determination in one of two ways.

First, should Plaintiff Isiaka complete 180 days of continuous active-duty service via completion of IET, he will be eligible for N-426 certification under Section I(3)(a) of the October 13, 2017 policy, which applies to service members in an active component.  *See*

SAMMA_0007 (requiring successful completion of basic training requirements; completion of at least 180 consecutive days of active-duty service, inclusive of basic training; and an honorable service characterization). In other words, where a reservist completes 180 consecutive days of active-duty service by way of IET, the reservist is eligible for certification under subsection 3(a) of Section I of the October 13, 2017 policy. Should this be the case for Plaintiff Isiaka, he may become eligible for N-426 certification as early as January 30, 2021 or sometime soon thereafter.

Second, and in addition, if Plaintiff Isiaka completes 180 days or more of consecutive active-duty service by way of completing IET, he will receive a characterization of his service separate and apart from a certified N-426. Upon completion of IET, a reservist is discharged from active duty back to the reserves and receives a DD Form 214; as noted above, where the reservist has completed more than 180 days of active-duty service, he or she is no longer in an entry-level status. *See* SAMMA_0112 (DoDI 133.14, Glossary). Accordingly, the service member will be entitled to a characterization of service. *See* SAMMA_0089-90 (DoDI 1332.14, Enclosure 4(3)(c)). Very likely, a DD Form 214 received after successful completion of IET will characterize a service member's service as honorable and can thus provide a basis for seeking naturalization. *See* 8 U.S.C. § 1440(a) (requiring DoD to determine whether a service member "served honorably in an active-duty status, and whether separation from such service was under honorable conditions"). Should this be the case for Plaintiff Isiaka, he may receive a DD Form 214 characterization his service as early as January 30, 2021 or sometime soon thereafter.[1]

---

[1] Unlike reservists, active-duty service members remain in active duty after completion of IET and thus do not receive a DD Form 214 separation or release from Active Duty document. Active-duty service members must thus rely on a certified N-426 to receive a certification of military service. Reservists on the other hand, most likely, will have a DD Form 214, and are not required to have a DoD official separately certify their N-426. The only reason that a reservist might seek an N-426 certification by operation of the one-year time-in-service requirement per Section I(3)(b) of the October 13, 2017 policy is if the reservist either chose to or is required to

Scenario #2: Completion of BCT, followed by completion of AIT sometime thereafter ("split training")

A second scenario for Plaintiff Isiaka is that there is time between his completion of BCT and his attendance at AIT, whether by choice or due to Army requirements and scheduling. In this instance, Plaintiff Isiaka would be separated from active-duty status and receive a DD Form 214 following completion of BCT (which lasts, on average, approximately 90 days). But because Plaintiff Isiaka would not have completed 180 consecutive days of active-duty service, he would remain in an entry-level status and will have an uncharacterized description of service on his DD Form 214. *See* SAMMA_0089-90 (DoDI 1332.14, Enclosure 4 (3)(c)).

In this instance, Plaintiff Isiaka will be eligible for N-426 certification under subsection 3(b) of Section I of the October 13, 2017 memorandum once he completes "at least one year of satisfactory service towards non-regular retirement," inclusive of completion of basic training (and assuming that his service is honorable). *See* SAMMA_0008. "One year of satisfactory service towards non-regular retirement" is contingent upon a service member accruing 50 points. *See* 10 U.S.C. § 12732(a)(2); *see also* DoDI 1215.07 § 3.1(a). Points are awarded for various activities, with the amount of points varying depending on the activity. *See* 10 U.S.C. § 12732(a)(2)(B)-(b); DoDI 1215.07 § 3.4(b) (setting forth points for inactive duty service). For purposes of the DTP, typically a reservist will accumulate four points per weekend of drilling: one point for every four-hour drilling period, with a maximum of two points accrued per day.

---

split BCT and AIT training into two or more separate periods of active duty, and, for some reason, the period of time that elapses between BCT and AIT is so long that the soldier completes one year of satisfactory creditable service before completing AIT. Functionally, Sections I(3)(a) and (b) attempt to treat reservists and active-duty soldiers as similarly as possible, but the one-year-of-creditable-service alternative to honorable service characterization permits some service members to receive a characterization of service even if they technically remain entry-level by operation of DoDI 1332.14 because their service record in the reserves is sufficiently developed to characterize his or her service.

*See* DoDI 1215.07 § 3.4(b)(2)-(3).  Plaintiff Isiaka will accrue one point for every day he attends BCT.  *See* DoDI 1215.07 § 3.4(a).

Plaintiff Isiaka, like all reservists, is further required to participate in at least 48 scheduled drills or training periods and serve on active duty for training for at least 14 days each year.  *See* 10 U.S.C. § 10147(a)(1).  Plaintiff Isiaka does not need to ship to BCT before he can begin accruing, through drilling in the DTP, qualifying time for purposes of both § 12732(a)(2) and § 10147(a)(1).  He will, however, need to attend BCT in order to meet the active-duty-for-training requirement under § 10147(a)(1) because drilling in the DTP does not constitute active-duty service.

DoD will consider how many points service members have accrued in a one-year period on the anniversary date of the member.  *See* 10 U.S.C. § 12732(a)(2); DoDI 1215.07 § 3.1(b).  The Army has calculated Plaintiff Isiaka's anniversary date as February 8, 2021, based on his initial drill date.  If Plaintiff Isiaka splits his BCT and AIT, and assuming that he has accrued a sufficient number of points during that year, he will be eligible for N-426 certification pursuant to subsection 3(b) of Section I of the October 13, 2017 memorandum on that date.

6. *If an active or reservist LPR is discharged while drilling or at basic training, would that be an entry level separation that would result in an uncharacterized discharge?  If so, would that preclude naturalization?  Would this be true even if the reason for the discharge was a medical condition that arose during basic training?*

Yes, discharge of any service member in either an active component or reserves, including LPRs, during basic training would result in an entry-level discharge and uncharacterized service characterization pursuant to DoDI 1332.14 Enclosure 4(3)(c), unless one of the exceptions set forth in that section applies.  *See* DoDI 1332.14 Enclosure 4(3)(c)(1)(a)(1)-

6

(2). Similarly, a reservist LPR discharged from the DTP[2] or while drilling in an entry-level status after completing BCT but prior to completing AIT (or its equivalent) would receive an entry-level separation and uncharacterized discharge.  In general, the above is true, depending on the individual facts of the case, if the separation was due to a medical condition.

Whether an uncharacterized discharge precludes separation is a question for USCIS, the agency that administers the naturalization provisions of § 1440.  It is Defendants' understanding that USCIS has informed this Court in a separate proceeding of its view that an uncharacterized discharge would not be sufficient for naturalization purposes, which is a decision-making process under the authority of USCIS.  *See* Defendant's Memorandum in Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Partial Summary Judgment at 13-16, *Miriyeva v. USCIS*, No. 1:19-cv-03351-ESH (D.D.C.) (Dec. 13, 2019).  Any additional information about the sufficiency of an uncharacterized discharge for naturalization purposes would need to be answered by USCIS.

7.     *In ¶ 6 of the Miller Declaration (Defs.' Cross Mot., Ex. 1, ECF 19-2), there is a reference to a DOD study.  Why is this not part of the administrative record?  Is it relevant to plaintiffs' claims relating to LPR Reservists?*

Defendants included an overview summary of the PERSEREC study in the Administrative Record to ensure that the Record reflected the various reviews and studies that DoD considered prior to issuing the three policy memoranda on October 13, 2017.  The PERSEREC study specifically pertains to the security vetting of the LPR population and whether there exist "gaps in [then-]current LPR vetting procedures."  *See* SAMMA_0039.  The full

---

[2] As noted in Defendants' previous supplemental brief, *see* Defs.' Am. Supp. Br. in Resp. to Pls.' Mot. for Class Cert. and Appointment of Class Counsel, ECF No. 32-1, at 4 & n.2, only the Army and Air Force utilized the Delayed Training Program allowing reservists to drill prior to attending basic training, whereas  Navy and Marine Corps reservists and all active component recruits are not permitted to drill while awaiting basic training.

study—which is classified—has been excluded from the Administrative Record in this case because Plaintiffs have pleaded a challenge to the time-in-service and O-6 requirements only, as Defendants have explained elsewhere.

Moreover, DoD relied on the PERSEREC study to issue the requirement that LPRs receive a favorable MSSD in order to receive N-426 certification, and that requirement has been held in abeyance.  Rather than requiring a favorable MSSD, DoD currently requires LPR service members to undergo ESP, but is not requiring (in Phase I) LPRs to complete ESP in order to ship to basic training.[3]  In Phase I—which applies to Plaintiffs Isiaka, Gunawan, and Machado, the only Plaintiffs yet to receive certified N-426s—a completed ESP is not required, either expressly or functionally, in order to be eligible for N-426 certification.  Consequently, the PERSEREC study was not considered by DoD when promulgating any of the requirements that apply to the Plaintiffs in this case who do not yet have certified N-426s.

Dated: July 10, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Nathan M. Swinton*
NATHAN M. SWINTON
Senior Trial Counsel
LIAM HOLLAND
Trial Attorney
U.S. Department of Justice

---

[3] LPRs, like all service members, must also have a completed Standard Form 86 and a Tier 3 background investigation opened in order to ship to basic training.  For those LPRs (or any service members) in the Army, they must also have a completed National Intelligence Agencies Check ("NIAC").

>Civil Division, Federal Programs Branch
1100 L Street NW, Room 12022
Washington, DC 20530
Tel: (202) 305-7667
Fax: (202) 616-8470
Email: Nathan.M.Swinton@usdoj.gov

>*Attorneys for Defendants*