## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANGE SAMMA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:20-cv-01104-ESH |
| | ) The Honorable Ellen Segal Huvelle |
| UNITED STATES DEPARTMENT OF | ) |
| DEFENSE and MARK ESPER, in his | ) |
| official capacity as Secretary of Defense, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to an email from the Court dated July 25, 2020, Defendants hereby file this supplemental brief for the limited purpose of responding to the questions raised by the Court. Those questions, and Defendants' responses, are as follows:

1. *Defendants should respond to plaintiffs' arguments on standing on pages 1-4* [of Plaintiffs' July 23, 2020 supplemental brief] *and clarify how the April 24, 2020 policy updated will work.  (See ECF 36, at 4 n.5.)  Are plaintiffs correct when they argue that the 30-day time period established by the April 24, 2020 policy only begins to run when the N-426 reaches the certifying official?*

According to officials within DoD's Office of the Under Secretary for Personnel and Readiness, the 30-day time period contemplated by the April 24, 2020 policy update begins when the first person in the chain of command receives the N-426 request.  If a service member submits a request for N-426 certification before he or she is eligible under the policy, the early submission does not count against the 30-day time period.

Plaintiffs' arguments in their supplemental brief regarding their challenge to the O-6 requirement largely rehash points they have made previously and, in any event, do nothing to

establish standing to challenge that requirement.  Plaintiffs assert that they are all subject to the O-6 requirement, which Defendants do not dispute, but Plaintiffs yet again fail to demonstrate that they themselves have been harmed by this requirement, *i.e.*, that the requirement has caused them any delay in or otherwise precluded them from obtaining N-426 certification.  Declarations submitted with Plaintiffs' preliminary injunction motion, to which Plaintiffs cite again in their supplemental brief, do not support their claim because they do nothing more than recount N-426 certification requests prior to DoD's implementation of the 30-day turnaround time frame and prior to their satisfying the time-in-service requirement.  *See* Decl. of Abner Buomo, ECF No. 4-20, ¶ 9 (requesting N-426 certification upon arrival at AIT, approximately three months after beginning active-duty status); Decl. of Ange Samma, ECF No. 4-23, ¶ 10 (same); Decl. of Sumin Park, ECF No. 4-25, ¶ 8 (requesting N-426 certification towards end—but prior to completion of—Advanced Individual Training ("AIT")).  Plaintiffs have provided nothing to overcome the most obvious explanation for their inability to obtain certified N-426s when the requests discussed in the declarations were made: their inability to meet the eligibility requirements for certification.  All three Plaintiffs now meet those requirements and have been certified.  *See* Mem. in Supp. of Defs.' Cross-Mot. for Summ. J. and Opp'n to Pls.' Mot. for Summ. J., ECF No. 19-1, at 14.

The remaining authorities to which Plaintiffs cite are equally unavailing.  Plaintiffs refer to a February 2020 law review article and 2019 Congressional testimony that appear to draw generalized conclusions based on hearsay and anecdotal evidence.  Neither of these sources identifies any harm suffered by *the Plaintiffs* due to the O-6 requirement, and both cited references pre-date the April 24, 2020 policy update.  As they have repeatedly throughout this case, Plaintiffs also cite to a 1968 Senate Judiciary Committee Report for the proposition that

Congress expected that non-citizens serving in the military would be able to naturalize "before shipping to their duty stations, including combat zones." *See* Pls.' Further Suppl. Br. in Supp. of Pls.' Mot. for Summ. J., ECF No. 36, at 4 n.5. Plaintiffs mischaracterize the cited passage of the report, which says nothing about ensuring that service members are naturalized prior to "shipping to their duty stations." *See* ECF No. 4-4 at 14. In any event, even those service members who ship to combat zones are still required to complete a minimum of three-months of active-duty service before they depart. *See* 10 U.S.C. § 671(a) ("A member of the armed forces may not be assigned to active duty on land outside the United States and its territories and possessions until the member has completed the [three-month long] basic training requirements of the armed force of which he is a member."). Service members do not ship to combat zones by virtue of having completed one or two drilling periods in the DTP (the amount of time Plaintiffs claim is sufficient for N-426 certification), so the connection Plaintiffs attempt to make between service in a combat zone and N-426 certification is unavailing.

2. *Will any LPR reservists who are similarly situated to Isiaka be eligible for naturalization with only a DD-214? (See ECF 36, at 10; ECF 34, at 4 & n.1.) Is the government representing that USCIS will accept a DD-214, and not require an N-426, for individuals serving in the Selected Reserve, if they are still serving but have been "honorably discharged" from initial entry training?*

As Defendants explained previously, when LPR reservists complete 180 days or more of continuous active-duty service, such as the back-to-back completion of basic training and AIT (or its equivalent if the service member is not in the Army), then the service member will be discharged from active duty to reserve status and will receive a Form DD-214 characterizing his or her service. *See* Defs.' Further Suppl. Br. in Resp. to Pls.' Mot. for Class Cert. and Appointment of Class Counsel, ECF No. 34, at 4. Based on conversations with counsel for U.S. Citizenship and Immigration Services ("USCIS"), it is Defendants' understanding that USCIS

will currently only allow Forms DD-214 to be used for naturalization purposes where a service member has separated from military service completely and not where a service member has been separated from active-duty status and returned to the Reserves.

3. *Explain how or why Isiaka received a N-426 without fulfilling the time-in-service or active duty requirements in Section I of the October 13, 2017 N-426 Policy.  (See ECF 40.)  Is it your position that this event moots his claim and that he cannot be a class representative?  Can the Court, as argued by plaintiffs (ECF 40, at 2), relate the class certification motion back to the filing of his complaint or some other time based on the inherently transitory doctrine?*

Defendants were not aware that Plaintiff Isiaka received a certified N-426 until Plaintiffs filed their July 24, 2020 Notice.  *See* ECF No. 40.  Following inquiry into the matter, the Army reports that the commander who signed the N-426 took command on June 1, 2020 and was not aware of the N-426 policy.  Plaintiff Isiaka's receipt of a certified N-426 moots his claim because he now has the certified N-426 he seeks in this action and the Army does not intend to revoke it.

The relation-back doctrine does not save Isiaka's moot claim.  As Defendants have explained, the challenged time-in-service requirements are sufficiently certain and sufficiently long to provide the Court a reasonable amount of time to decide class certification.  *See* Defs.' Surreply in Resp. to Pls.' Mot. for Class Cert. and Appointment of Class Counsel, ECF No. 29, at 4.  But Isiaka did not receive his Form N-426 pursuant to the challenged October 13, 2017 Policy.  Instead, he received the Form N-426 notwithstanding the challenged policy.  Unless Isiaka is challenging something other than the October 13, 2017 Policy that is more transitory, which he is not, he cannot rely on his erroneous receipt of a certified N-426 in violation of the Policy to challenge it.

Dated: July 28, 2020                     Respectfully submitted,

ETHAN P. DAVIS

4

Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Nathan M. Swinton*
NATHAN M. SWINTON
Senior Trial Counsel
LIAM HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 12022
Washington, DC 20530
Tel: (202) 305-7667
Fax: (202) 616-8470
Email: Nathan.M.Swinton@usdoj.gov

*Attorneys for Defendants*