UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGE SAMMA, *et al.*,<br><br>    **Plaintiffs**,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE, *et al.*,<br><br>    **Defendants.** | Civil Action No. 20-cv-1104 (ESH) |

## MEMORANDUM OPINION

Plaintiffs are noncitizens serving in the United States military.  They filed this putative class action under the Administrative Procedure Act to challenge the United States Department of Defense's policy on issuing Certifications of Honorable Service (USCIS Form N-426), which is the form that noncitizens must file with United States Citizenship and Immigration Services in order to apply for naturalization based on military service pursuant to 8 U.S.C. § 1440.  Before the Court are plaintiffs' motion for class certification and appointment of counsel, and cross-motions for summary judgment.  This Memorandum Opinion, and the accompanying Order, address only the motion for class certification and appointment of counsel.

Plaintiffs seek certification pursuant to Federal Rule of Civil Procedure Rule 23(a), (b)(1)(A) and/or (b)(2).  Defendants raise several valid objections, which require modification of the proposed class, but with those modifications, class certification is appropriate.  Accordingly, for the reasons set forth herein, plaintiffs' motion for class certification and appointment of

counsel will be granted in part and denied in part.[1]

## BACKGROUND

### I.    FACTUAL BACKGROUND

The N-426 Form ("Request for Certification of Military or Naval Service") is a form created by the United States Citizenship and Immigration Services ("USCIS").  It must be signed by a representative of the unit of the Armed Forces where the noncitizen is serving and submitted to USCIS along with the service member's application for naturalization.  On October 13, 2017, the United States Department of Defense ("DOD") issued a formal guidance memorandum on the "Certification of Honorable Service for Members of the Selected Reserve of the Ready Reserve and Members of the Active Components of the Military or Naval Forces for Purposes of Naturalization" ("N-426 Policy").  (*See* AR 6-9.)  The N-426 Policy requires noncitizens serving in the United States military to satisfy specific requirements before they are deemed eligible for a certified N-426.  For service members whose enlistment or accession was on or after October 13, 2017, the N-426 Policy provides that:

> (1) the power to certify an N-426 can either be exercised by the Secretary of the Military Department concerned or be delegated, by the Secretary, to a commissioned officer serving in the pay grade of O-6 or higher ("O-6 Requirement") (AR 6);

---

[1] Because the parties ended up filing multiple supplemental briefs after the initial briefing on the motion for class certification, the Court will list all of the relevant filings here with the abbreviations that will be used to refer to them throughout this Memorandum Opinion: Pls.' Mot. for Class Cert., Apr. 28, 2020, ECF No. 5 ("Pls.' Class Cert. Mot."); Defs.' Resp. to Pls.' Class Cert. Mot., June 1, 2020, ECF No. 23 ("Defs.' Class Cert. Opp."); Pls.' Reply in Support of Class Cert. Mot., June 8, 2020, ECF No. 26 ("Pls.' Class Cert. Reply"); Defs.' Class Cert. Surreply, June 22, 2020, ECF No. 29 ("Defs.' Surreply"); Defs.' Supp. Br., July 1, 2020, ECF No. 32 ("Defs.' 7/1/20 Supp. Br."); Pls.' Supp. Br., July 2, 2020, ECF No. 33 ("Pls.' 7/2/20 Supp. Br."); Defs.' Supp. Br., July 10, 2020, ECF No. 34 ("Defs.' 7/10/20 Supp. Br."); Pls.' Supp. Br., July 23, 2020, ECF No. 36 ("Pls.' 7/23/20 Supp. Br."); Pls.' Mem. Clarifying the Decl. of Timotius Gunawan, July 28, 2020, ECF No. 41 ("Pls.' 7/28/20 Clarification"); Defs.' Supp. Br., July 28, 2020, ECF No. 42 ("Defs.' 7/28/20 Supp. Br.").

(2) to obtain a certified N-426, noncitizen "Service Members in an Active Component" must have "successfully completed the basic training requirements of the armed force of which he/she is a member" and "[c]ompleted at least 180 consecutive days of active duty service, inclusive of the successful completion of basic training" ("Active Minimum Service Requirement") (AR 7 (Section I.3.a)); and

(3) to obtain a certified N-426, noncitizen "Service Members in the Selected Reserve of the Ready Reserve" must have "successfully completed the basic training requirements of the armed force of which he/she is a member" and "[c]ompleted at least one year of satisfactory service towards non-regular retirement in accordance with Department of Defense Instruction 1215.07, 'Service Credit for Non-Regular Retirement,' as a member of the Selected Reserve, inclusive of the member's successful completion of basic training" ("Reservist Minimum Service Requirement") (AR 8 (Section I.3.b)).[2]

On April 24, 2020, in response to a provision in the National Defense Authorization Act for Fiscal Year 2020 ("2020 NDAA"),[3] DOD issued an update to the N-426 Policy that provides: "Upon receipt from a qualified applicant of [USCIS] Form N-426, 'Request for Certification of Military or Naval Service,' the certifying official will process it with priority and return it to the Service member concerned within 30-days of submission."  (AR 1.)  As represented by defense counsel,"[a]ccording to officials within DoD's Office of the Under Secretary for Personnel and Readiness, the 30-day time period contemplated by the April 24, 2020 policy update begins when the first person in the chain of command receives the N-426 request."  (Defs.' 7/28/20 Supp. Br. at 1.)

_____

[2] On its face, the N-426 Policy also requires that service members complete certain "screening and suitability requirements" before they can obtain a certified N-426.  (*See* AR 7.)  However, these requirements are no longer at issue.  *See* Defs.' 7/1/20 Supp. Br. at 3; Defs.' 7/10/20 Supp. Br. at 8; Motions Hr'g Tr. at 9, July 16, 2020, ECF No. 37 ("7/16/20 Tr.").)

[3] Section 526 of the 2020 NDAA provides that the "Secretary of Defense shall publish regulations for submission and processing of a completed United States Citizenship and Immigration Services Form N-426, by a member of the Armed Forces.  Such regulations shall designate the appropriate level for the certifying officer as well as establish time requirements for the form to be returned to the member of the Armed Forces."  133 Stat. 1198, 1356 (2019) (codified at 10 U.S.C. § 1781, Note).

## II.      PROCEDURAL BACKGROUND

On April 28, 2020, six named plaintiffs (Ange Samma, Abner Bouomo, Ahmad Isiaka, Michael Perez, Sumin Park, and Yu Min Lee), who are noncitizens serving in the United States Armed Forces, filed this putative class action, claiming that the O-6 Requirement and the Minimum Service Requirements in the N-426 Policy violate various provisions of the Administrative Procedure Act ("APA").  (*See* Compl., ECF No. 1; Am. Compl., ECF No. 24.) [4] Of the six, five were serving in Active Components while one, Isiaka, was serving in the Reserves.  As clarified by a later filing, plaintiffs specifically claim that the O-6 Requirement, the Active Minimum Service Requirement, and the Reservist Minimum Service Requirement are arbitrary and capricious, *see* 5 U.S.C. § 706(2)(A), and were enacted without notice and comment, *see* 5 U.S.C. § 553; 5 U.S.C. § 706(2)(D).  (*See* Pls.' 7/2/20 Supp. Br. at 8.)  With respect to the Active and Reservist Minimum Service Requirements, they further claim that they violate the APA because they are not in accordance with law, 5 U.S.C. § 706(2(A), are in excess of statutory jurisdiction, *see* 5 U.S.C. § 706(2)(C), and they result in unlawfully withheld and unreasonably delayed agency action, *see* 5 U.S.C. § 706(1).  (*See* Pls.' 7/2/20 Supp. Br. at 8.)

Plaintiffs filed a motion for class certification and appointment of class counsel at the same time they filed their initial complaint, seeking to certify a class consisting of  "All individuals who: (a) are non[]citizens serving honorably in the U.S. military; (b) have requested but not received a certified Form N-426; and (c) are not Selected Reserve MAVNIs covered by the *Kirwa* lawsuit."[5]  (Pls.' Class Cert. Mot. at 8.)  Defendants responded and raised several

---

[4] Count I of both the complaint and amended complaint is styled as a claim brought directly under the 8 U.S.C. § 1440, but plaintiffs agree that it is subsumed by the APA claim in Count III. (*See* 7/16/20 Tr. at 79.)

[5] MAVNI is the acronym for DOD's "Military Accessions Vital to the National Interest" Pilot Program, an enlistment option that was available from 2009 through September 30, 2016, for

objections to plaintiffs' proposed class definition.  (*See* Defs.' Class Cert. Opp. at 2.)  They also challenged the standing of five of the six named plaintiffs because, since the filing of the complaint, each had received a certified N-426.  Finally, they argued that the one remaining plaintiff without an N-426 (Isiaka) lacked standing to challenge the O-6 requirement.  (*Id*. at 4.) Plaintiffs filed a reply, acknowledging that the receipt of an N-426 mooted an individual plaintiff's claim (Pls.' Class Cert. Reply at 3 & n.2),[6] but they also filed an amended complaint, adding two additional plaintiffs (Timotius Gunawan and Rafael Leal Machado), who were both serving in active components, had not satisfied the Minimum Service Requirements, and had not received an N-426.  They proposed these two new plaintiffs, along with plaintiff Isiaka, as "suitable class representatives with live claims."  (Pls.' Class Cert. Reply at 3.)  Plaintiffs also proposed a modified class definition, deleting the word "honorably," to address one of defendants' objections.[7]  (*See* Am. Compl. ¶¶ 25, 26, 166; Pls.' Class Cert. Reply at 9 n.4.)

At the Court's request, defendants filed a surreply to address the effect of plaintiffs'

---

certain noncitizens who were not lawful permanent residents but had foreign language or medical skills that the military was in need of.  "Selected Reserve MAVNIs covered by the *Kirwa* lawsuit" refers to the class certified in *Kirwa v. U.S. Dep't of Defense*: "all persons who had (1) enlisted in the U.S. military through the [MAVNI] program prior to October 13, 2017, (2) served in the Selected Reserve of the Ready Reserve, and (3) not received a completed and duly authenticated Form N-426."  Order, *Kirwa*, No. 17-cv-1793 (D.D.C. Dec. 1, 2017), ECF No. 48.

[6] Plaintiffs initially took the position that Lee's claim was not moot, even though she had received a certified N-426, because they believed that there might be errors in the N-426 that would prevent it from being accepted by USCIS.  (*See* Pls.' Class Cert. Reply at 3.)  However, given the representation of defendants (*see* Teleconference Tr. at 15-16, June 26, 2020, ECF No. 39), the Court is satisfied that Lee's claim is moot.

[7] Defendants argued that plaintiffs' "inclusion of the phrase 'serving honorably' in the proposed class definition would therefore make the class unascertainable because there would be no way to determine who among the proposed class is currently 'serving honorably.'" (Defs.' Class Cert. Opp. at 6.)  Concluding that the modifier "honorably" was unnecessary, plaintiffs deleted it from the proposed class definition in their amended complaint.  (*See* Am. Compl. ¶ 66; Pls.' Class Cert. Reply at 8.)

adding two new plaintiffs in their amended complaint. Defendants acknowledged that there were now three plaintiffs with live claims, Isiaka, Gunawan and Machado, but they maintained that no plaintiff had standing to challenge the O-6 Requirement. (*See* Defs.' Surreply at 2.) The Court then posed additional questions to both plaintiffs and defendants, which were addressed in supplemental briefing. (*See* Defs.' 7/1/20 Supp. Br.; Pls.' 7/2/20 Supp. Br.; Defs.' 7/10/20 Supp. Br.) Plaintiffs' supplemental brief clarified that the class would only include individuals governed by Section I of the N-426 Policy and proposed that the class be divided into subclasses to account for the difference in requirements for individuals serving in active components and individuals serving in the Reserves. (*See* Pls.' 7/2/20 Supp. Br. at 1, 9.)

Accordingly, plaintiffs are seeking certification of a class consisting of "all individuals who: (a) are non[]citizens serving in the U.S. military [who are subject to Section I of the N-426 Policy]; (b) have requested but not received a certified Form N-426[;] and (c) are not Selected Reserve MAVNIs covered by the *Kirwa* lawsuit," (Pls.' Class Cert. Reply at 9 n.4), with two subclasses, one consisting of class members who "are lawful permanent residents [("LPRs")] serving in the Selected Reserve of the Ready Reserve," and the other consisting of class members (both LPRs and MAVNIs) who "are non[]citizens serving in an active [component] in the U.S. military."[8] (Pls.' 7/2/20 Supp. Br. at 9.) Plaintiffs' proposed class representatives are the three plaintiffs who had not received their N-426s at the time the amended complaint was filed on June 8, 2020, with Isiaka representing the Reservist subclass and Gunawan and Machado representing the Active subclass.[9]

---

[8] Plaintiffs' proposed definition uses the phrase "serving in an active duty status," but, in order to keep the subclass definitions consistent with the distinctions drawn by the N-426 Policy, the Court has replaced it with "serving in an active component."

[9] Isiaka is an LPR who enlisted in the Selected Reserve of the U.S. Army Reserve in January 2020. (Am. Compl. ¶ 21.) He began drilling in February 2020, and he is scheduled to ship to

On July 16, 2020, the Court held argument on the motion for class certification and the

cross-motions for summary judgment.  During the argument, the Court tentatively ruled that it

would grant the motion for class certification but that the class claims would be limited to a

challenge to the Minimum Service Requirements because the Court was of the opinion that none

of the proposed class representatives (or any named plaintiff) had standing to challenge the O-6

Requirement given the April 24, 2020 policy update.  (*See* Motions Hr'g Tr. at 14, 81, July 16,

2020, ECF No. 37 ("7/16/20 Tr."))  However, plaintiffs were given leave to file a supplemental

brief to further address that issue, which was pertinent to both class certification and summary

judgment.  (*See* 7/16/20 Tr. at 22.)  After plaintiffs filed their brief, which included numerous

exhibits and a declaration from Gunawan (*see* Pls.' 7/23/20 Supp. Br.), they learned that Isiaka

had received a certified N-426 on July 21, 2020, even though he had not yet satisfied the

Reservist Minimum Service Requirement.  (*See* Pls.' Notice Regarding Pl. Ahmad Isiaka, July

24, 2020, ECF No. 40 ("Isiaka Notice").)  Defendants were then asked, *inter alia*, to respond to

plaintiffs' standing arguments, to explain how Isiaka received a certified N-426 without having

complied with the N-426 Policy requirements, and to address the effect of Isiaka receiving an N-

426.  Defendants advised the Court that Isiaka had received an N-426 in error, signed by a

commander who was "unaware of the N-426 policy," but that the Army did not intend to revoke

it and that their position is that Isiaka cannot represent the Reservist subclass because his claim is

now moot.  (Defs.' 7/28/20 Supp. Br. at 4.)  On July 29, 2020, Gunawan, in another apparent

---

basic training on August 3, 2020.  (Am. Compl. ¶ 21, 105, 106.)  Gunawan is an LPR who
enlisted in the U.S. Navy in November 2019.  (Am. Compl. ¶ 25.)  He shipped to basic training
in February 2020, and he is currently serving on active duty.  (Am. Compl. ¶ 25, 130, 131.)
Machado is an LPR who enlisted in the U.S. Air Force in October 2019.  (Am. Compl. ¶ 26.)  He
shipped to basic training in January 2020, and he is currently serving on active duty.  (Am.
Compl. ¶ 26, 137, 138.)

error because he has not yet met the Active Minimum Service Requirement, received a certified

N-426.  (Pls.' Notice Regarding Pl. Timotius Gunawan, July 31, 2020, ECF No. 43 ("Gunawan

Notice").)

## ANALYSIS

### I.     LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs the certification of class actions in federal

court.  Rule 23(a) sets out the four "prerequisites" for any class action:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or
> defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the
> class.

These four "threshold requirements" are referred to as "numerosity," "commonality,"

"typicality," and "adequacy of representation."  *In re Lorazepam & Clorazepate Antitrust Litig.*,

289 F.3d 98, 106 (D.C. Cir. 2002).

Rule 23(b) provides that "[a] class action may be maintained if Rule 23(a) is satisfied,"

and the action meets the requirements of either Rule 23(b)(1), (b)(2), or (b)(3).  *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Here, plaintiffs seek certification under Rule

23(b)(1)(A) and/or (b)(2).  (Pls.' Class Cert. Mot. at 13.)  Subsection (b)(1)(A) permits a class

action if "prosecuting separate actions by or against individual class members would create a risk

of . . . inconsistent or varying adjudications with respect to individual class members that would

establish incompatible standards of conduct for the party opposing the class."  Subsection (b)(2)

permits a class action if "the party opposing the class has acted or refused to act on grounds that

apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole."

"The party seeking certification bears the burden of persuasion[] and must show that the putative class[ ] meet[s] the requirements of Rule 23 by a preponderance of the evidence." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 204 (D.D.C. 2018).  To carry that burden, plaintiffs must "affirmatively demonstrate . . . compliance with the Rule—that is, [they] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The Court must undertake a "rigorous analysis" to confirm that the requirements of Rule 23 have been satisfied.  *Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 161 (1982).

## II.    DEFENDANTS' OBJECTIONS

Defendants have raised five objections to certifying plaintiffs' proposed class.  Four do not implicate Rule 23, so they will be addressed first.

### A.    Mootness

Since the Court heard argument on plaintiffs' motion for class certification—when it indicated that it intended to grant the motion, at least in part—two of the three proposed class representatives (Isiaka and Gunawan) have received certified N-426s, although neither satisfied the applicable Minimum Service Requirement established by the N-426 Policy.  Defendants take the position that because Isiaka's claim is now moot, he cannot represent the Reservist Subclass, and they would presumably take the same position as to Gunawan and his ability to represent the Active Subclass.  Plaintiffs, however, argue that even though Isiaka and Gunawan have received N-426s, the "relation-back doctrine" allows their claims to be related-back to a time when they were live.  (Isiaka Notice at 1–2; Gunawan Notice at 2.)  The Court agrees.

Courts may "relate [a class] certification motion back' to a date when the individual claims were live," "where a named plaintiff's claim is inherently transitory and becomes moot prior to certification." *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019) (citations and internal

quotation marks omitted).  Two factors are to be considered in applying the relation-back doctrine:  (1) the extent to which the individual claims are "inherently transitory" and (2) the likelihood that that "some class members will retain a live claim throughout the proceedings." *Id.* at 1310.  Both factors support application of the relation-back doctrine here.  In addition, it would be particularly unfair to plaintiffs to find that Isiaka and Gunawan can no longer represent the class when their claims are only moot because defendants erroneously issued their N-426s before they had met the Minimum Service Requirements.  The Court therefore concludes that Isiaka and Gunawan remain appropriate class representatives.

### B.    Standing to Challenge O-6 Requirement

Defendants argue that no class can be certified to challenge the O-6 requirement because none of the proposed class representatives has standing to challenge that requirement.  The Court agrees.

"A plaintiff seeking . . . class certification must, as a threshold matter, satisfy the justiciability requirements of Article III of the United States Constitution."  *Gomez v. Trump*, No. 20-cv-01419, 2020 WL 3429786, at *5 (D.D.C. June 23, 2020).  "Ordinarily, 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'"  *Id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).  To establish constitutional standing, a plaintiff must establish "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992))).  In addition, "standing is not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), so a plaintiff

10

who is injured by one discrete aspect of a regulatory action does not have standing to challenge

other discrete aspects of the action that have not caused an injury.  *See Friends of Animals v.*

*Bernhardt*, 961 F.3d 1197, 1204–05 (D.C. Cir. 2020) (affirming district court's "approach of

evaluating the effect of each [part of the agency action in an agency memorandum] individually

instead of considering the [memorandum] as a whole").

Plaintiffs argue that Isiaka, Gunawan and Machado each have standing to challenge the

O-6 requirement because (1) "each . . . continues to suffer injury due to his inability to obtain an

N-426 and seek naturalization under 8 U.S.C. § 1440"; (2) their injury is "fairly traceable to the

O-6 requirement" because [t]here is no question that the O-6 requirement has applied to

Plaintiffs since they began their service and were eligible for an N-426, and that it has been and

continues to be one factor preventing them from receiving an N-426"; and (3) their injury would

be redressed by the relief they seek because they "request that the Court order Defendants to use

their best efforts to certify or deny their N-426s within two business days" and "removing the O-

6 requirement would permit far more officials to certify N-426s than under the current policy."

(Pls.' 7/23/20 Supp. Br. at 3-4.)

Based on the record, the Court cannot find that plaintiffs' alleged injury is fairly traceable

to the O-6 Requirement – "that it has been and continues to be one factor preventing them from

receiving an N-426."  (*Id*. at 2.)  First, the amended complaint does not specifically allege that

Isiaka, Gunawan, or Machado's inability to obtain an N-426 was caused in any way by the O-6

Requirement.  (*See* Am. Compl. ¶¶ 105-09, 130-144.)  To the contrary, for each plaintiff only the

Minimum Service Requirements were alleged as a cause of any delay.  (*See* Am. Compl. ¶ 107

("Isiaka requested his N-426 certification from his Unit Administrator on or about the end of

February or beginning of March 2020.  His Unit Administrator refused to help him obtain the

11

certification and told him that he had not been serving for long enough and that he would have to complete basic combat and advanced individual training before he could receive his certification."); Am Compl. ¶ 133 ("Gunawan . . . requested his N-426 certification from one of his training instructors at accession training in April 2020.  The training instructor told him that he would need to serve six months before he would be eligible for the certification and that he would therefore have to wait until he shipped to his duty station."); Am. Compl. ¶ 134 ("Gunawan . . . requested his N-426 certification from a Petty Officer at accession training in May 2020.  The Petty Officer gave him a memorandum from the Naturalization Coordinator at the Navy Medicine Training Support Center stating that prior to applying for naturalization, service members must first serve 180 days on active duty or one year in the Selected Reserve."); Am. Compl. ¶ 140 ("Machado . . . requested his N-426 certification from one of his training instructors at basic military training in January 2020.  The training instructor told him that he would first have to complete technical training and that he would have to wait until he shipped to his duty station to request his certification.").)  Indeed, none of these plaintiffs could have plausibly alleged a delay caused by the O-6 Requirement as none had met the Minimum Service Requirement at the time the amended complaint was filed.

Similarly, Isiaka and Gunawan's declarations do not contend that the O-6 Requirement has delayed, or is likely to delay, the issuance of a certified N-426.[10]  Isiaka's declaration echoes the allegation in the complaint that he has been unable to obtain a certified N-426 because he has not satisfied the N-426 Policy's Minimum Service Requirements.  (*See* Isiaka Decl. ¶ 13, ECF No. 4-22 ("On or about the end of February or beginning of March 2020, I requested my certification of honorable service ("N-426") from my Unit Administrator. The Unit

---

[10] The record does not include a declaration from Machado.

Administrator refused to help me obtain the N-426 certification and told me that I had not been serving long enough and that I would have to first attend basic combat and advanced individual training before I could receive the certification.").  The only reference to the O-6 Requirement is: "I also understand that the Army is requiring that an officer of O-6 pay grade or higher designated by the Secretary of the Army complete N-426 certifications."  (Isiaka Decl. ¶ 15.) Gunawan's declaration describes the injuries he has or will suffer due to a delay in obtaining an N-426 because that will delay his ability to apply for citizenship, but he says nothing about the O-6 Requirement contributing to that delay.  (See Gunawan Decl. ¶¶ 1-7, ECF No. 36-12.)

Despite the failure of the proposed class representatives to allege injury caused by the O-6 Requirement, plaintiffs suggest that the declarations of three other named plaintiffs (Bouomo, Samma, and Park) are sufficient to establish that the O-6 Requirement will necessarily delay the processing of requests for N-426s by the proposed class representatives and all putative class members.  For several reasons, though, these declarations do not support that conclusion. Bouomo's declaration states only that he was provided with a memorandum that reflected the O-6 Requirement, but it does not contend that the O-6 Requirement hindered his ability to obtain an N-426.  (See Bouomo Decl. ¶ 7, ECF 4-20.)  Park's declaration reflects that he was told by two of his superiors that it could take "longer than nine weeks" or a "long time" to get an N-426 up the "chain of command" and signed, but there is no evidence that it actually took that long.[11] (Park Decl. ¶¶ 8, 10, ECF 4-25.)  As for Samma, he alleged that it took almost two months from when he submitted his N-426 for it to be returned to him, and he speculates that the reason it

---

[11] In Park's case, his N-426 certification was delayed because someone in his chain of command made a mistake and refused to process his N-426 because he had not yet served for one year. (See Park Decl. ¶ 11.)  Once this lawsuit was filed, and that error detected, he received his certified N-426.

took so long was the O-6 Requirement.  However, that was back in the fall of 2019, long before

the adoption of the 30-day turnaround requirement in the April 24, 2020 policy.  Thus, any delay

Samma experienced that may have been caused by the O-6 Requirement as it existed in the fall

of 2019 does not support plaintiffs' allegation that plaintiffs subject to the updated policy would

experience similar delays under the updated policy.  Indeed Samma, along with Park, Lee, Perez,

and Bouomo, received certified N-426s soon after the April 24, 2020 policy was adopted.  (*See*

Defs.' Class Cert. Opp. at 3.)  Thus, the current proposed class representatives will benefit from

the recently enacted April 24, 2020 policy, so the experiences of other named plaintiffs who

were not covered by the mandated 30-day turnaround are not relevant.

Plaintiffs' reliance on a statement prepared for a Congressional hearing in December

2019 and a Yale Law Journal article published in February 2020, (*see* Pls.' 7/23/20 Supp. Br. at

3), is similarly flawed because the evidence of delays cited in these publications predates the

adoption of the April 24, 2020 policy.

Finally, plaintiffs' speculation that the O-6 Requirement necessarily means additional

delays in the processing of an N-426 is belied by what transpired in the *Kirwa* litigation.  *See*

*Kirwa v. U.S. Dep't of Defense*, No. 17-1793 (D.D.C.).  In *Kirwa*, the injunction required the

military to use its best efforts to sign and return certified N-426s within two business days of

their submission.  *See* Amended Order at 1-2, *Kirwa*, Oct. 27, 2017, ECF No. 32.  It was able to

accomplish this in almost all cases with the O-6 Requirement in effect.  *See* Status Report,

*Kirwa*, July 24, 2020), ECF No. 230.  There is thus no factual basis to conclude that the O-6

requirement in in current form will unduly delay the issuance of N-426s to anyone in the future.

In sum, none of the proposed class representatives, Isiaka, Gunawan, and Machado, has

alleged an injury (past or in the imminent future) that is fairly traceable to O-6 Requirement as

amended by the April 24, 2020 policy update, so none has standing to challenge that requirement.  Without a class representative with standing, plaintiffs' challenge to the O-6 Requirement is not suitable for class certification, and this claim must be dismissed for lack of jurisdiction.

### C.      Exclusion of Plaintiff in *Kotab*

Defendants next argue that the Court should exclude the plaintiff in *Kotab v. U.S. Department of the Air Force*, No. 2:18-cv-2031, 2019 WL 4677020, at *1, *4 (D. Nev. Sept. 25, 2019), from any class.  (*See* Defs.' Class Cert. Opp. at 7.)  In *Kotab*, the plaintiff was an LPR who had enlisted in the Air Force Selected Reserve.  2019 WL 4677020, at *4.  Proceeding *pro se*, he filed a lawsuit that, in relevant part, challenged the N-426 Policy under the APA.  *Id.*  The court dismissed the APA claims, concluding that any challenge to the N-426 Policy was non-justiciable, *id.* at *6, and also that no review was available under the APA because the N-426 Policy reflects DOD's decision-making in an area that is "committed to agency discretion by law."  *Id.* at *9 (quoting 5 U.S.C. 701(a)(2)).  Defendants argue that Kotab must be excluded from the class because the *Kotab* court ruled against him on the same claims a class would be bringing here.  (*See* Defs.' Class Cert. Opp. at 7; Defs.' Surreply at 5.)  Plaintiffs agree that Kotab must be excluded (*see* 7/16/20 Tr. at 81) , so there is no dispute for the Court to resolve.  Accordingly, Thomas X. Kotab will be excluded from any class the Court certifies.

### D.      Exclusion of Class Members in *Kuang*

Defendants also argue that the class members in *Kuang v. United States Department of Defense*, 340 F. Supp. 3d 873 (N.D. Cal. 2018), should be excluded "from obtaining any relief in this case to the extent that it overlaps with the relief sought in *Kuang*."  (*See* Defs.' Class Cert. Opp. at 7-8.)  In *Kuang*, the district court certified a class of LPRs who had signed enlistment contracts and sought to challenge a different DOD policy, albeit one that was also adopted on

October 13, 2017. *Kuang*, 340 F. Supp. 3d at 893. The policy at issue in *Kuang* provided that LPRs could not ship to basic training until certain security and screening requirements had been completed. (AR 10-11 ("LPR Policy").) One of the injuries alleged by the *Kuang* plaintiffs was that, by delaying the date they could ship to basic training, the new LPR Policy delayed their ability to meet the criteria in the N-426 Policy and thus delayed their ability to apply for citizenship. *Kuang*, 340 F. Supp. 3d at 897.

Defendants appear to be arguing that because plaintiffs here allege the same "type" of injury, any relief they might be granted in this case would overlap with the relief they sought (and were ultimately denied) in *Kuang*.[12] But just because two events cause the same type of injury does not mean that the relief overlaps. And here it clearly does not. The relief sought by the plaintiffs in *Kuang* was to vacate the LPR Policy that required security screenings to be completed before an enlistee could ship to basic. Vacating that policy would have given the plaintiffs relief from the delay caused by the time it took to complete those screenings. The relief sought by plaintiffs here is to vacate the Minimum Service Requirements in the N-426 Policy. Vacating the Minimum Service Requirements would give plaintiffs relief from the delay caused by having to complete those requirements. Even if those time periods "overlap," the relief sought is distinct. Accordingly, the Court will not exclude members of the *Kuang* class from any class certified here.[13]

---

[12] The district court in *Kuang* issued a preliminary injunction in November 2018 that vacated the LPR Policy, but the Ninth Circuit reversed, holding that the LPR Policy was unreviewable. *See Kuang*, 778 Fed. Appx. 418, 420-21 (9th Cir. 2019).

[13] In actuality, there is very little overlap between the two classes because the classes here are limited to individuals who are "serving" while the *Kuang* class consists of LPRs who have not yet shipped to basic training. As only members of the Selected Reserve "serve" before shipping to basic training, the only members of the *Kuang* class who could also be members of a class here would be LPRs who had enlisted in the Selected Reserves and had begun drilling.

### III.    RULE 23

Having addressed the issues that fall outside of Rule 23, the Court now turns to the question of whether plaintiffs' proposed class and subclasses, limited as discussed above, satisfy both Rule 23(a) and Rule 23(b)(1)(A) and/or (2).  Defendants contest only the Rule 23(a) requirements of commonality and typicality, but the Court must be satisfied that any class it certifies meets all of Rule 23's requirements.

#### A.    Rule 23(a)

##### 1.    Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement imposes no absolute limitations, although as a rule of thumb a class of over 40 members satisfies numerosity. *Coleman v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015).

Defendants do not dispute numerosity, and the record before the Court confirms plaintiffs' contention that the proposed subclasses are sufficiently numerous.  (*See* Pls.' Class Cert. Mot. at 7 & Ex. 2 (Dep't of Defense Fact Sheet) (about 5,000 LPRs enlist in the military each year); Defs.' 7/1/20 Supp. Br. at 4 (estimating that since July 1, 2019, approximately 1827 LPRs have enlisted in the Reserves with approximately 779 still waiting to ship to basic training).)

#### B.    Commonality

The commonality requirement is met when "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2); *see also Wal-Mart Stores*, 564 U.S. at 350.  That is, plaintiffs' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

17

Defendants argue that the proposed subclasses do not satisfy the commonality requirement because they include individuals who have met the Minimum Service Requirements. (Defs.' Class Cert. Opp. at 4, 5.)  The Court agrees.

Given that the Court has concluded that the proposed class representatives only have standing to challenge the Minimum Service Requirements, it follows that the class must be limited to individuals whose inability to obtain an N-426 is being caused by those requirements. In other words, individuals who do not yet have an N-426 but who have satisfied the minimum service requirements are not being injured by those requirements and a ruling that vacated those requirements would not any relief to those individuals.

With that modification, the proposed subclasses easily satisfy commonality.  As the D.C. Circuit has explained, commonality is satisfied where there is "a uniform policy or practice that affects all class members."  *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013); *see also*, *e.g.*, *O.A. v. Trump*, 404 F. Supp. 3d 109, 156 (D.D.C. 2019) (Commonality is satisfied where "[a]ll members of the proposed class, and all of the proposed class representatives, face the same threat of injury . . . . [,] [a]ll challenge the same Rule on the same grounds, and all seek the same remedy—invalidation of the Rule.").  Here, the Active Minimum Service Requirement in the N-426 Policy is a uniform policy that applies to all members of the Active Subclass and the Reservist Minimum Service Requirement in the N-426 Policy is a uniform policy that applies to all members of the Reservist Subclass.  And for each of plaintiffs' claims, there are only common questions and common answers, e.g., what was DOD's rationale for adopting Minimum Service Requirements in the N-426 Policy?  do the Minimum Service Requirements conflict with 8 U.S.C. § 1440, which establishes the requirements for naturalization based on military service during armed conflict?

Accordingly, with the class limited to individuals who have not yet met the Minimum Service Requirements, the requirement of commonality is satisfied.

### C.    Typicality

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of class," Fed. R. Civ. P. 23(a)(3).  Typicality demands that the proposed representative plaintiffs "possess the same interest and suffer the same injury" as the other class members.  *Gen. Tel. Co. of Sw.*, 457 U.S. at 156.  Defendants raised the same objection to typicality as they did to commonality -- that the class representatives' claims were not typical because the class included individuals who had met the Minimum Service Requirements. However, that objection has now been addressed, and the class definition modified accordingly, so that the claims of all class members are identical to the claims of the proposed class representatives.  In such cases, typicality is clearly satisfied.

### D.    Adequacy

The requirement that the class representatives "will fairly and adequately protect the interests of the class" imposes two conditions on plaintiffs seeking to represent a class: (1)  "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class"; and (2) "the representative must appear able to vigorously prosecute the interests of the class through qualified counsel."  *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (citation and internal quotation marks omitted).

Defendants do not dispute that plaintiffs have met the adequacy requirement, and the Court agrees.  The proposed class representatives have the same interests as class members, and they appear willing and able to prosecute the interests of the class through qualified counsel. (*See* Pls' Class Cert. Mot. at 12-13.)  Proposed class counsel are clearly competent to represent the class and have already demonstrated their ability to vigorously represent it.  (*See* Pls.' Class

Cert. Mot. at 12-13; Kaufman Decl. ¶¶ 3-9.)  Accordingly, the fourth criteria of adequacy of representation is clearly satisfied.

**IV.      RULE 23(b)**

In addition to satisfying Rule 23(a), the proposed class must also fall into one of the categories set forth in Rule 23(b).  Plaintiffs seek certification under Rule 23(b)(1)(A) and/or Rule 23(b)(2).  Rule 23(b)(1)(A) permits certification if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ."  Fed. R. Civ. P. 23(b)(1)(A).  Rule 23(b)(1)(2) permits certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Plaintiffs' proposed class, with the modifications to the class definition discussed above, can be certified under either subsection (b)(1)(A) or (b)(2).  The class is certifiable under subsection (b)(1)(A) because if individual class members were to bring separate suits challenging the Minimum Service Requirements in Section I of the N-426 Policy, the adjudication of these actions would risk creating inconsistent decisions that would establish varying standards to which defendants would have to adhere.  The class is also certifiable under subsection (b)(2), because defendants are refusing to issue N-426s to all service member who have not met the Minimum Service Requirements in the N-426 Policy and "a single injunction or declaratory judgment" vacating the applicable Minimum Service Requirement "would provide relief to each member of the class."  *Wal-Mart*, 564 U.S. at 360.  In this respect, the present case is indistinguishable from *Kirwa*, where the court certified a class to challenge a different part of the N-426 Policy.  *Kirwa*, 285 F. Supp. 3d at 44; *see also Nio*, 323 F.R.D. at 34 (Rule 23(b)(2) may

be satisfied where plaintiffs are "challenging the application of standardized policies that generally apply to the class."). Accordingly, the Court finds that the proposed class and subclasses are certifiable under Rule 23(b)(1)(A) and (b)(2).

## V.   APPOINTMENT OF CLASS COUNSEL

Upon certifying the class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B), (g).  Rule 23(g) requires the Court to consider the following four factors:

> i. the work counsel has done in identifying or investigating potential claims in the action;
>
> ii. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> iii. counsel's knowledge of the applicable law; and
>
> iv. the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Defendants raise no objection to the appointment of plaintiffs' counsel as class counsel, and after considering the information provided by plaintiffs in their motion and in the declaration of Brett Max Kauffman (*see* Pls.' Class Cert. Mot. at 16; Kauffman Decl. ¶¶ 5-9), the Court finds that all four factors weigh in favor of their appointment. Accordingly, the Court will appoint plaintiffs' counsel as class counsel to represent the class and the subclasses the Court has certified.

## CONCLUSION

Accordingly, for the reasons stated above, plaintiffs' Motion for Class Certification and Appointment of Counsel is granted in part and denied in part. Pursuant to Rule 23(a), (b)(1)(A) and (b)(2), the Court is certifying a class and two subclasses. The Class shall consist of all

individuals who:

(a) are noncitizens serving in the U.S. military;

(b) are subject to Section I of the October 13, 2017 N-426 Policy (AR 6) ("N-426

Policy"), as updated by DOD's April 24, 2020 Memorandum (AR 1);

(c) have not received a certified N-426; and

(d) are not Selected Reserve MAVNIs in the class certified in *Kirwa v. U.S. Dep't of Defense*, No. 17-cv-1793 (D.D.C. Dec. 1, 2017).

The Class shall be divided into an Active Subclass and a Reservist Subclass. The Active Subclass shall include all individuals in the Class who are noncitizens serving in an Active Component of the U.S. military and have not satisfied the Minimum Service Requirements in Section I.3.a of the N-426 Policy. Plaintiffs Gunawan and Machado will serve as Class Representatives, and this subclass is certified to challenge the Active Minimum Service Requirement in Section I.3.a of the N-426 Policy. The Reservist Subclass shall include all individuals in the Class who are lawful permanent residents (LPRs) serving in the Selected Reserve of the Ready Reserve and have not satisfied the Minimum Service Requirements in Section I.3.b of the N-426 Policy, excluding the plaintiff in *Kotab v. U.S. Dep't of the Air Force*, No. 2:18-cv-2031, 2019 WL 4677020 (D. Nev. Sept. 25, 2019). Plaintiff Isiaka will serve as the Class Representative, and this subclass is certified to challenge the Reservist Minimum Service Requirement in Section I.3.b of the N-426 Policy.

Plaintiffs' counsel are appointed as Class Counsel. A separate Order accompanies this Memorandum Opinion.

ELLEN SEGAL HUVELLE
United States District Judge

Date: August 4, 2020