UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGE SAMMA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF DEFENSE, *et al.*, <br><br> *Defendants*. | Civil Action No. 20-1104 (RDM) |

## MEMORANDUM OPINION AND ORDER

In this Administrative Procedure Act case, Plaintiffs—a class of non-citizen, active duty and select reserve members of the United States military—challenge the lawfulness of a 2017 Department of Defense policy that imposed certain durational and type-of-service requirements (the "Minimum Service Requirements") on non-citizen members of the United States military before they could obtain a certification of honorable service ("N-426 certification"), which is necessary to seek U.S. citizenship on the basis of their military service. On August 25, 2020, this Court certified a class, Dkt. 45; granted Plaintiffs' motion for summary judgment, Dkt. 46; vacated the Minimum Service Requirements, Dkt. 47 at 2; and ordered Defendants to certify or deny a submitted Form N-426 within 30 days of submission, Dkt. 47 at 2–3. Defendants noticed an appeal on October 23, 2020. Dkt. 51. That appeal is being held in abeyance, however, while the Department of Defense considers potential policy options. Clerk's Order, *Samma v. Dep't of Def.*, No. 20-5320 (D.C. Cir. June 30, 2021).

Close to a year later, on August 17, 2022, Plaintiffs filed a Motion to Enforce Court Order, alleging that the Department of Defense has "in many cases continued to enforce the Minimum Service Requirements" and has "defied this Court's injunction." Dkt. 58 at 2. Along

with their motion, Plaintiffs filed several declarations and exhibits detailing certain class members' difficulty in obtaining an N-426 certification from their chain of command within 30 days, including instances where class members were erroneously instructed by their superiors that they had to comply with the Minimum Service Requirements before requesting an N-426 certification.  Dkts. 59–73.  Defendants filed an opposition to the motion on October 18, 2021, Dkt. 80; *see also* Dkts. 81–91 (accompanying declarations), to which Plaintiffs replied on November 1, 2021.  Dkt. 93; *see also* Dkts. 94–100 (accompanying declarations).  While the motion has been pending, Plaintiffs have periodically filed additional declarations and letters with the Court identifying new instances of alleged noncompliance.  Dkts. 101–105, 108, 111, 112.

In their motion, Plaintiffs ask the Court to modify its injunction pending appeal, pursuant to Federal Rule of Civil Procedure 62(d), in order to better effectuate compliance by Defendants. In particular, they ask the Court to require Defendants to (1) identify a point of contact in the Army, with authority to take appropriate action, for class members who experience problems submitting their N-426 certification requests; (2) provide a list of all class members in the Army who have requested an N-426 certification, the dates they submitted their requests, and the dates (if any) on which they received their N-426 certifications; (3) provide monthly status reports on the Army's compliance with the Order, including a list of all class members in the Army who have requested an N-426 certification since the previous report; (5) confer with Plaintiffs to create a proposed joint communication advising the class of its rights under the Order and distribute that communication to all class members in the Army and to all new class members each month; (6) certify or deny, within ten days, all N-426 certification requests from class members whose requests have been pending for over 30 days; and (7) remove certain archived,

historical press releases from the Department of Defense's website that reference the Minimum Service Requirements.  Dkt. 93-1 at 1–2.

On February 22, 2022, the case was transferred to the undersigned judge, and the Court held a hearing on the motion on March 16, 2022.  For the reasons below, the Court will **DENY** Plaintiffs' motion without prejudice.

The shortcomings in Defendants' initial compliance with the Court's injunction that Plaintiffs identified in their motion and accompanying declarations are cause for concern.  Of note, Plaintiffs have provided evidence that written guidance advising soldiers that they must comply with the Minimum Service Requirements circulated at the Army's largest training base, Fort Jackson, for *months* after the Court vacated those requirements.  Dkt. 58 at 16.  As government counsel pointed out at the March 16, 2022 motion hearing, however, the question before the Court is not whether historical violations of the order have occurred but instead whether, at present, there remain significant concerns regarding Defendants' compliance such that a modification of the Court's injunction is necessary to secure the class members' rights under the injunction going forward.  *See* Fed. R. Civ. P. 62(d); *Christian Sci. Reading Room Jointly Maintained v. City & Cnty. of San Francisco*, 784 F.2d 1010, 1017 (9th Cir. 1986) ("[Rule 62(d)] codifies the inherent power of a court to preserve the status quo where, in its sound discretion, the court deems the circumstances so justify." (quotation omitted)); *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 985 F. Supp. 2d 23 (D.D.C. 2013).

With this standard in mind, and after considering the parties' submissions and the arguments presented at the motion hearing, the Court finds that, although Defendants' initial response to the Court's order created cause for concern, Defendants have taken significant,

concrete steps to improve their compliance in the months since Plaintiffs filed their motion to enforce. These efforts—at least based on the record presently before the Court—appear to be sufficient to secure the class members' rights under the injunction pending appeal. Significantly, shortly after Plaintiffs filed their motion, the Department of the Army issued two Army-wide "fragmentary orders"[1] to ensure compliance with the Court's injunction. The first of these orders—referred to as "FRAGO 2"—informed military personnel that, in order to certify honorable service for purposes of naturalization, "[t]here is no required wait period; one day of military service suffices for the soldier to submit the request." Dkt. 82-6 at 5. It reiterated that "[t]he prior guidance requiring a soldier to complete 180 consecutive days of active duty service, or to complete at least one (1) year of satisfactory service towards non-regular retirement, no longer applies." *Id.* And it ordered authorized certifying personnel, "upon receipt from a qualified applicant of the USCIS Form N-426," to "return it to the soldier[] within 30 calendar days of submission." *Id.* The order prohibited "commanders and certifying officials" from "declin[ing] to process, or act on the request, or deny the request, on the basis of the soldier's time in service." *Id.* Finally, it required "commanders at all levels . . . to disseminate the information contained in [the order] to the lowest levels and ensure that all leaders, including squad leaders and drill sergeants, understand their responsibilities to process and route these actions as expeditiously as possible to their commanders." *Id.*

Four days later, on August 23, 2021, the Army issued a further order, "FRAGO 3." FRAGO 3 required "all brigade-level commanders" to "confirm receipt of FRAGO 2 and

---

[1] A fragmentary order is "an abbreviated form of an operation order issued as needed after an operation order to change or modify that order or to execute a branch or sequel to that order." U.S. Dep't of Army, Field Manual, Commander and Staff Organization and Operations, Glossary-6 FM 6-0 C1 (May 11, 2015).

confirm that their company and battalion command teams . . . have read and understood their obligations." Dkt. 82-7 at 5. It also ordered "commanders at all levels" to "affirmatively acknowledge" their obligation to "disseminate the information contained in FRAGO 2 to the lowest levels [of the chain of command] and ensure that all leaders, including squad leaders and drill sergeants, understand their responsibilities to process and route these actions as expeditiously as possible to their commanders" and then "report their understanding to the [Rank of O-6 Level Colonel who has N-426 approval authority] who will report compliance to the senior leader of their organization." *Id.*

In short, the Army has issued sweeping military orders to the entire chain of command that require not only compliance with the Court's injunction but also dissemination of the order throughout the ranks and an affirmative acknowledgment by commanders that they have done so. Beyond that, the orders require "commanders at all levels" to report their understanding of the revised policy to the officer vested with N-426 approval authority. These orders constitute significant steps to ensure compliance with the Court's order, and accordingly the Court finds that Defendants have engaged in good faith and substantial efforts to comply with the Court's order.

Notwithstanding Defendants' efforts, Plaintiffs have identified eleven examples of noncompliance that have occurred over the past seven months. A few considerations lead the Court to conclude, however, that these examples are isolated incidents and that they are not indicative of ongoing, noncompliance with the Court's order. First, although Plaintiffs have identified eleven instances of noncompliance since the motion was filed, that is out of several thousands of N-426 certifications. *See* Dkt. 80 at 24. As Defendants point out, moreover, many of these instances of noncompliance involve delays that are not caused by erroneous applications

of the Minimum Service Requirements. *Id.* at 30–34.  Thus, more than anything, these failures likely reflect the administrative difficulty of implementing a policy within a massive organization like the Army.  Second, even though FRAGOs 2 and 3 were issued in August, defense counsel represented to the Court that there was some administrative delay in implementing the orders at certain bases and that, for example, Fort Sill—where two of the eleven violations occurred—was unable to fully implement the FRAGOs until January 2022.  Finally, the Court observes that, when contacted by class counsel about each incident of noncompliance to date, defense counsel and the Department of Defense have worked diligently to take corrective action, ensuring both that certification decisions are made promptly and that any noncomplying personnel are educated regarding the Court's order.  Dkt. 80 at 25.  Defense counsel has indicated that he will continue to address any such matters that are raised to his attention going forward.[2]

In light of Defendants' good faith and substantial efforts to comply with this Court's directives, the Court deems it appropriate to provide a further opportunity for Defendants' compliance initiatives to take effect and will, accordingly, deny Plaintiffs' motion without prejudice.  If, however, material noncompliance with the Court's order persists, Plaintiffs may renew their motion to enforce.  In the meantime, however, the Court orders the parties to meet

---

[2] The Court observes that some of Plaintiffs' requested relief, particularly concerning class notice, overlaps with Congress's recent enactment of a "notice program relating to options for naturalization" in Section 523 of the National Defense Authorization Act.  National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 523, 135 Stat. 1541, 1687 (2021).  That section provides that "[t]he Secretary of each military department shall prescribe regulations that ensure that a military recruit, who is not a citizen of the United States, receives proper notice of options for naturalization under title III of the Immigration and Nationality Act (8 U.S.C. 1401 et seq.)," and that "[s]uch notice shall inform the recruit of existing programs or services that may aid in the naturalization process of such recruit." *Id.* § 523(a).

and confer and encourages the Department of Defense to use its authority to address any problems that exist without creating a need for the Court to intervene.

Accordingly, it is hereby **ORDERED** that Plaintiffs' Motion to Enforce Court Order, Dkt. 58, is **DENIED** without prejudice.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 22, 2022